ELLIOT ENOKI #1528,
Executive Assistant U.S. Attorney
District of Hawaii
Attorney for the United States, Acting
Under Authority Conferred by 28 U.S.C. § 515
SYDNEY SPECTOR #11232,
Assistant U.S. Attorney

J. PATRICK GLYNN, Director
CHRISTINA FALK, Assistant Director
MARIANNE F. KIES, Trial Attorney
ERIC REY, Trial Attorney
Environmental Tort Litigation Section
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Tel: (202) 353-1819
Email: Marianne.F.Kies@usdoj.gov; Eric.Rey@usdoj.gov

*Attorneys for the United States of America*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PATRICK FEINDT, JR., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CIVIL NO. 22-cv-00397-LEK-KJM<br><br>SUPPLEMENTAL BRIEF IN SUPPORT OF PARTIAL MOTION TO DISMISS FIFTH AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1)<br><br>HEARING: Feb. 2, 2024, 9:45 a.m.<br>TRIAL: Apr. 22, 2024, 9:00 a.m.<br><br>JUDGE: Hon. Leslie E. Kobayashi |

|  |  |
|---|---|
| JESSICA WHALEY et al., | CIVIL NO. 1:23-cv-457-LEK-KJM |
| Plaintiffs, | |
| vs. | SUPPLEMENTAL BRIEF IN SUPPORT OF PARTIAL MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) |
| THE UNITED STATES OF AMERICA, | |
| Defendant. | JUDGE: Hon. Leslie E. Kobayashi |

### SUPPLEMENTAL BRIEF IN SUPPORT OF
### PARTIAL MOTION TO DISMISS FIFTH AMENDED COMPLAINT
### PURSUANT TO FED. R. CIV. P. 12(b)(1)[1]

---

[1] This supplemental brief in *Feindt* is jointly filed in *Whaley* by stipulation of the Parties, as concerns the United States' pending Partial Motion to Dismiss in *Whaley*. *See* 1:23-cv-457, ECF No. 41 (stipulation), ECF Nos. 21, 31, 38 (*Whaley* Partial Motion to Dismiss). Unless otherwise stated, record citations herein are citations to docket entries in *Feindt*.

ii

# TABLE OF CONTENTS

**PAGE(s)**

TABLE OF AUTHORITIES ............................................................................ ii

INTRODUCTION ...........................................................................................1

BACKGROUND..............................................................................................2

ARGUMENT ...................................................................................................3

I.    DFE's Prong 2 Immunizes Conduct that Is Objectively "Susceptible" to Policy Considerations. ..................................................................................5

II.   Under the Clear Weight of Authority, Remediation Decisions Made in the Context of an Emergency Response Are Objectively Policy-Based...............6

III.  The Conduct at Issue in Plaintiffs' Remediation Claim Is Susceptible to Policy Analysis. ......................................................................................7

   A. Plaintiffs' Allegations Challenging the Navy's Decisions Not to Scrub the Air or to Replace Piping or Water Heaters Attack the Protocol; Therefore, This Conduct Is Susceptible to Policy Considerations............8

   B. The Navy's Request that Residents Flush Their Homes Immediately After the Spill Was Also, by Its Nature, Policy-Based. ...........................10

CONCLUSION .............................................................................................11

# TABLE OF AUTHORITIES

**PAGE(s)**

<u>CASES</u>

*Bailey v. United States*,
623 F.3d 855 (9th Cir. 2010) .................................................................. 5, 7, 10

*Banning Heights Mut. Water Co. v. United States*,
2009 WL 10698982 (C.D. Cal. Oct. 23, 2009) .............................................. 7, 11

*Cunningham v. United States*,
786 F.2d 1445 (9th Cir. 1986) ...................................................................7

*Daigle v. Shell Oil Co.*,
972 F.2d 1527 (10th Cir. 1992) ............................................................... 7, 11

*Freeman v. United States*,
556 F.3d 326 (5th Cir. 2009) .....................................................................7

*GATX/Airlog Co. v. United States*,
286 F.3d 1168 (9th Cir. 2002) ...................................................................6

*Gonzalez v. United States*,
814 F.3d 1022 (9th Cir. 2016). .......................................................... *passim*

*Miller v. United States*,
163 F.3d 591 (9th Cir. 1998) ...................................................................6, 7

*Schurg v. United States*,
63 F.4th 826 (9th Cir. 2023) ................................................................. 6, 11

*Shea Homes Ltd. P'ship v. United States*,
397 F. Supp. 2d 1194 (N.D. Cal. 2005)........................................................ 1, 4, 6

*Shorter v. L.A. Unified Sch. Dist.*,
2013 WL 6331204 (C.D. Cal. Dec. 4, 2013).....................................................3

*United States v. Gaubert*,
499 U.S. 315 (1991) ...............................................................................5, 6

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*,
    467 U.S. 797 (1984) ......................................................................................5

*Walsh v. Nev. Dep't of Human Res.*,
    471 F.3d 1033 (9th Cir. 2006) .........................................................................3

## INTRODUCTION

On February 14, 2024, this Court directed supplemental briefing "on the second prong of the discretionary function exception analysis regarding the portion of Count II alleging failure to properly remediate affected homes [after the jet fuel spill]." ECF No. 275 at 1–2, Feb. 14, 2024 Order (hereafter, "Order"); *see* Fifth Amended Complaint (ECF No. 210, "FAC") ¶ 481(j). The Court held that Prong 1 of the Discretionary Function Exception ("DFE") applies to this claim, because the decisions Plaintiffs challenge were discretionary. Order at 12–16.

To satisfy Prong 2 of the DFE, the United States must demonstrate that its discretionary decision how to remediate Plaintiffs' homes was, by its nature, susceptible to policy analysis. *Gonzalez v. United States*, 814 F.3d 1022, 1032 (9th Cir. 2016). Governmental decisions made in response to public health and environmental hazards are quintessentially policy-based. *See, e.g.*, *Shea Homes Ltd. P'ship v. United States*, 397 F. Supp. 2d 1194, 1200 (N.D. Cal. 2005), *cited in* Order at 17. Plaintiffs' allegations—which second-guess the Navy's decisions made in immediate response to the Red Hill spill, and at the height of a global pandemic—are barred.

## BACKGROUND

In its Motion to Dismiss (ECF No. 213), the United States demonstrated that the Navy decided to remediate Plaintiffs' homes by flushing and then sampling them, pursuant to the terms of a protocol that the Navy jointly developed with the Environmental Protection Agency ("EPA") and the State of Hawaii Department of Health ("HDOH"). *See generally* Ex. A to Decl. of CDR Trevor Bingham (ECF No. 213-2) ("Single Family Home Flushing Protocol and Standard Operating Procedures," hereafter, "the Protocol"). Although the FAC does not mention the Protocol by name, the factual allegations underlying Plaintiffs' claim of failure-to-remediate (the "Failure-to-Remediate Claim") fundamentally attack the Protocol's scope and adequacy. Namely, Plaintiffs allege that the Navy's flushing program (which is memorialized in the Protocol):

1. Did not include "replacement of plastics or water heaters," nor did it include "scrubbing" the air; and

2. Did not successfully remove all traces of contamination, insofar as certain unspecified individuals continued to experience symptoms after returning to their homes post-flushing.

*E.g.*, FAC ¶¶ 58, 59.

The FAC also challenges an initial flushing effort that predated the Protocol, whereby the Navy asked residents to run their water, and flush toilets and other

2

devices to remove contaminants." FAC ¶ 51. The FAC alleges that this initial

flushing "program" "compounded" Plaintiffs' harms. *Id.*[2] A similar allegation

appears in the *Whaley* complaint. *See Whaley*, 1:23-cv-457, ECF No. 1 ¶ 36.

## ARGUMENT

Plaintiffs' Failure-to-Remediate claim directly challenges the Navy's

discretionary, policy-laden decision-making in the immediate aftermath of a

potential public health emergency. Specifically, FAC Paragraphs 58 and 59 attack

the sufficiency of the Protocol, which the Navy prepared in close consultation with

(and subject to the approval of) the HDOH in the weeks following the November

20, 2021 jet fuel spill. Bingham Decl. ¶ 7. As explained by Commander Bingham,

the Protocol embodies competing policy considerations, including balancing the

health of the residents with the health of the individuals performing the flushing.

*Id.* ¶ 10. FAC Paragraph 51 attacks Navy decisions made only days after the spill

(predating the Protocol), when the Navy was in triage mode and moving as quickly

---

[2] Plaintiffs' Opposition to the United States' Motion to Dismiss their Failure-to-Remediate Claim (ECF No. 219, "Opp'n") did not mention the initial flushing program that predated the Protocol in arguing either DFE prong. *See generally* Opp'n; *compare id.* at page 20 (focusing on the Navy's decision not to replace plumbing or water heaters when it flushed Plaintiffs' homes). Therefore, the United States did not address the pre-Protocol residential flushing in its Reply (ECF No. 223). By failing to make this argument in their Opposition, Plaintiffs waived it. *See Shorter v. L.A. Unified Sch. Dist.*, 2013 WL 6331204, at *5 (C.D. Cal. Dec. 4, 2013) (citing cases); *accord Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006). Nonetheless, the United States addresses the allegation here.

as possible to address resident concerns. All the decisions Plaintiffs challenge are policy-based. *See Shea Homes*, 397 F. Supp. 2d at 1200, *cited in* Order at 17.

Examination of Plaintiffs' allegations underscores why dismissal under Prong 2 is necessary. The flushing program memorialized in the Protocol took, on average, two hours to complete for each home. *See* Protocol (Ex. A to Bingham Decl.) at page 1 ("It will require roughly 2 hours to completely flush a typical home following this SOP."). The Navy's residential flushing effort was a "monumental task" involving 200 individuals, which took months to complete. *See* Bingham Decl. ¶ 11. Now, Plaintiffs contend that the Navy's effort should have been more extensive, to include replacing piping and water heaters and scrubbing the air. FAC ¶¶ 58–59. But Plaintiffs' preferred approach, made with the benefit of hindsight, would have required the Navy to expend even more time and resources into flushing each residence. That extra time, when multiplied by the thousands of residences on the water line, would have slowed remediating the entire water system, which in turn could have delayed the return of residents from hotels and their return to normal. *See* Bingham Decl. ¶ 11. Plaintiffs have not proffered any evidence that their approach would have yielded materially different results.

Plaintiffs invite this Court to question the Navy's judgment. However, "[i]t was precisely this sort of judicial intervention in policymaking that the discretionary function exception was designed to prevent." *United States v. S.A.*

*Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 820 (1984) ("Here, the FAA has determined that a program of 'spot-checking' manufacturers' compliance with minimum safety standards best accommodates the goal of air transportation safety and the reality of finite agency resources."); *Bailey v. United States*, 623 F.3d 855, 863 (9th Cir. 2010) ("In hindsight it may be easy to say the Corps should have replaced the signs sooner," but "[w]here the government is forced, as it was here, to balance competing concerns, immunity shields the decision" (quotation marks omitted)).

The Navy's decisions regarding in-home remediation, including the initial residential flushing program and the Protocol, were both actually and objectively policy based. Therefore, DFE Prong 2 bars Plaintiffs' Failure-to-Remediate claim.

## I.   DFE's Prong 2 Immunizes Conduct that Is Objectively "Susceptible" to Policy Considerations.

Prong 2 of DFE applies to conduct that is "susceptible" to policy analysis. *Gonzalez*, 814 F.3d at 1032. "The focus of the inquiry is not on the agent's *subjective* intent in exercising the discretion conferred by statute or regulation, but on the *nature of the actions* taken." *United States v. Gaubert*, 499 U.S. 315, 325 (1991) (emphases added); *Gonzalez*, 814 F.3d at 1032 (courts "examine the nature of the Government's action [or omission]" and decide whether it is susceptible to policy analysis "under an objective assessment"); *GATX/Airlog Co. v. United*

5

*States*, 286 F.3d 1168, 1178 (9th Cir. 2002) ("[T]he question is not whether policy factors necessary for a finding of immunity were *in fact* taken into consideration, but merely whether [the] decision is *susceptible* to policy analysis."); *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998) (same).

Therefore, to establish Prong 2 with respect to Plaintiffs' Failure-to-Remediate claim, the United States' burden is only to demonstrate that the decisions Plaintiffs challenge are of the "nature" that DFE is meant to protect. *Gaubert*, 499 U.S. at 325; *Gonzalez*, 814 F.3d at 1032.

## II.    Under the Clear Weight of Authority, Remediation Decisions Made in the Context of an Emergency Response Are Objectively Policy-Based.

As this Court has acknowledged, policy judgment may be implicated 'when evaluating and responding to public health and environmental hazards.'" Order at 17 (quoting *Shea Homes*, 397 F. Supp. 2d at 1200).

Remediation decisions—made in the context of a vast emergency response, during a global pandemic, and under significant resource constraints—are quintessentially policy-laden. *See, e.g.*, *Schurg v. United States*, 63 F.4th 826, 834 (9th Cir. 2023) (Prong 2 satisfied in case involving fire-suppression activities: "The Forest Service had to balance the team's safety during a time of worsening fire conditions . . . with the time-intensive nature of reaching members of the public on a personalized basis."); *Banning Heights Mut. Water Co. v. United*

6

*States*, 2009 WL 10698982, at *3 (C.D. Cal. Oct. 23, 2009) ("The 'government's decisions about when, where, and how to allocate limited resources within the exigencies of an emergency are the types of decisions that the discretionary function exception was designed to shelter from suit.'" (quoting *Freeman v. United States*, 556 F.3d 326, 340 (5th Cir. 2009))); *accord Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1541–42 (10th Cir. 1992) (agencies' remediation decisions satisfied DFE Prong 2 because EPA "must balance overall priorities—in this case the need for a prompt cleanup and the mandate of safety—with the realities of finite resources and funding considerations. We are not permitted to 'second-guess' that policy determination." (internal citations omitted)); *Bailey*, 623 F.3d at 862 ("[W]hen a decision requires an agency to balance competing safety considerations, that decision *is* susceptible to a policy analysis." (emphasis in original)) (citing *Miller*, 163 F.3d at 595–96).

III.    **The Conduct at Issue in Plaintiffs' Remediation Claim Is Susceptible to Policy Analysis.**

"The nature of the conduct involved governs whether the so-called discretionary function exception applies." *Cunningham v. United States*, 786 F.2d 1445, 1446 (9th Cir. 1986), *cited in* Order at 21–22. As explained in Part I above, to prevail, the United States need only establish that the remediation process was *susceptible* to policy considerations. *Gonzalez*, 814 F.3d at 1034 ("The

7

discretionary function exception applies so long as the challenged decision is one to which a policy analysis could apply."). So, for example, the United States need not prove that the United States *actually* considered policy when it decided not to replace devices in Plaintiffs' homes or to scrub the air. Rather, what matters is that "[c]hoices such as these . . . are among the judgment-laden decisions the discretionary function exception was enacted to shield." *Id.* at 1037.

A.    Plaintiffs' Allegations Challenging the Navy's Decisions Not to Scrub the Air or to Replace Piping or Water Heaters Attack the Protocol; Therefore, This Conduct Is Susceptible to Policy Considerations.

Plaintiffs allege that the Navy's flushing efforts—memorialized in the Protocol—should have included scrubbing the air and replacing piping and water heaters. *E.g.*, FAC ¶¶ 58–59. However, the Navy's flushing program reflects the Navy's (and EPA's and HDOH's) considered judgment about how best to remediate Plaintiffs' homes, including how to remediate the air, piping, and water heaters in the residences. Ex. A to Bingham Decl. (ECF No. 213-2).

As one example, the Protocol deliberately included measures to address potential air contamination in residents' homes, by requiring that windows be opened before flushing began while ensuring that residents' pets were safe. *See* Protocol at Step 2 ("Prepare for Home Flushing") (second block bullet) ("Open windows and doors so that any petroleum/chemicals in the air exit the buildings. Do not open windows or doors in rooms that contain secured pets."). Moreover, if

8

a fuel smell became apparent at any point during the multi-step flushing program, the Protocol directed flushing personnel to "utilize blowers/ceiling fans/bathroom fans to ventilate the space," and to seek further assistance if these ventilation efforts were unsuccessful. *E.g.*, Protocol at 1 & 2, under "Attention" (third bullet); *id.* at Step 3 ("Perform Service Line and Water System Flush"), under "Attention" (third bullet); *id.* at Step 5 ("Perform Hot Water System Flush"), under "Attention" (second bullet). The Navy's decisions regarding how to remediate the air in Plaintiffs' residences, by their nature, weighed competing policy considerations, including resource and time constraints and the need to move efficiently to remediate thousands of residences in a short timeframe. Bingham Decl. ¶ 10.

As reflected in the Protocol, the Navy, EPA, and HDOH chose to drain water heaters in the residences on the water line, rather than to replace them. *See, e.g.*, Protocol at Step 4 ("Drain Water Heater") (outlining a 10-step process for draining water heaters, including (after approximately 10 to 15 minutes), closing the cold-water supply valve to stir up and flush out sediment). As also reflected in the Protocol, the Navy, EPA, HDOH chose to flush Plaintiffs' pipes after removing all aerators. *E.g.*, Protocol at Steps 3, 5. These decisions were also, by their nature, based on the same policies as the decisions regarding how to remediate the air.

With the benefit of hindsight, it is easy to say that the Navy should have "scrubbed" the air instead of opening the windows and running fans. *Compare*

9

Protocol at Step 2 ("Prepare for Home Flushing"), *with* FAC ¶ 58. It is also easy to

say, in hindsight, that in addition to *flushing* certain devices inside the homes (as

required by the Protocol), the Navy should have also *replaced* certain devices

entirely. *Compare* Protocol at Steps 4 ("Drain Water Heater"), 7 ("Address Major

Appliances"), *with* FAC ¶ 58. But Plaintiffs' allegations that the United States

should have departed from the Protocol—to take more time, to do more things, or

to do things differently—"is exactly the judicial second-guessing of government

decision-making that the discretionary function exception is designed to prevent."

*Bailey*, 623 F.3d at 863 ("In hindsight it may be easy to say the Corps should have

replaced the signs sooner . . ."). Commander Bingham has explained the policy

considerations that influenced the Navy's development of the Protocol, which

HDOH approved. Bingham Decl. ¶¶ 7, 10. As this testimony is unrebutted,

dismissal under Prong 2 is the only proper outcome.

> B.    The Navy's Request that Residents Flush Their Homes Immediately
>        After the Spill Was Also, by Its Nature, Policy-Based.

Plaintiffs' FAC also challenges the Navy's request to residents to flush their

own homes 10 days after the jet fuel spill. FAC ¶ 37 ("Ten days after the blast, on

November 30, 2021, the Resident Services Office sent an email to families stating

that the Navy had not detected petroleum constitutes [sic] in the water. They asked

that all JBPHH residents flush their water systems. And they stated that they were

10

still investigating the 'source' of the odor."); *accord Whaley*, 1:23-cv-457, ECF No. 1 ¶ 36.

Like Plaintiffs' challenges to the Protocol, this allegation strikes at the very core of DFE. As Plaintiffs acknowledge, the Navy's request came at a time when its investigation of the spill was still underway. FAC ¶ 37. In other words, the Navy was grappling with addressing a public health emergency before it even understood the scope of the problem. In the hopes of addressing (and potentially even resolving) the residents' concerns immediately, the Navy asked them to flush the water from their homes. Plaintiffs now claim that the flushing made them sicker. FAC ¶ 51. But for Prong 2, what matters is whether the Navy's decision was grounded in policy. It was. *Schurg*, 63 F.4th at 834; *Banning Heights Mut. Water Co.*, 2009 WL 10698982, at *3; *accord Daigle*, 972 F.2d at 1541.

For the reasons discussed at length above, the Navy's decisions about how to remediate Plaintiffs' homes were both subjectively and objectively policy based.

## CONCLUSION

The Court should dismiss Plaintiffs' Failure-to-Remediate Claim pursuant to the FTCA's Discretionary Function Exception. *See* FAC ¶ 481(j); *Whaley*, 1:23-cv-457, Compl. (ECF No. 1) ¶ 106(j).

11

Dated: February 28, 2024          Respectfully submitted,

          BRIAN BOYNTON
          Principal Deputy Assistant Attorney
          General, Civil Division

          J. PATRICK GLYNN
          Director

          CHRISTINA FALK
          Assistant Director

          /s/ Marianne F. Kies
          MARIANNE F. KIES (DC Bar #1023554)
          ERIC REY
          Trial Attorneys
          United States Department of Justice
          Civil Division, Torts Branch
          Environmental Tort Litigation
          1100 L Street, NW
          Washington, DC 20005
          Phone: 202-353-1819
          E-mail: Marianne.F.Kies@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on February 28, 2024, a true and correct copy of the

foregoing was filed and served on counsel of record via the U.S. District Court's

CM/ECF electronic filing system.

/s/ Marianne F. Kies
Marianne F. Kies
