LYLE S. HOSODA             3964-0
KOURTNEY H. WONG           10827-0
SPENCER J. LAU             11105-0
HOSODA LAW GROUP, AAL, ALC
Three Waterfront Plaza, Suite 499
500 Ala Moana Boulevard
Honolulu, Hawaii 96813
Telephone:   (808) 524-3700
Facsimile:    (808) 524-3838
Email: lsh@hosodalaw.com
khw@hosodalaw.com; sjl@hosodalaw.com

KRISTINA S. BAEHR          *Pro Hac Vice*
JAMES BAEHR               *Pro Hac Vice*
MARY M. NEUSEL            *Pro Hac Vice*
JUST WELL LAW, PLLC
2606 W 8th St, Unit 2
Austin, TX 78703
Telephone: (512) 994-6241
Email: kristina@well.law; jim@well.law; maggie@well.law

FREDERICK C. BAKER         *Pro Hac Vice*
JAMES W. LEDLIE           *Pro Hac Vice*
KRISTEN HERMIZ            *Pro Hac Vice*
CYNTHIA A. SOLOMON        *Pro Hac Vice*
SARA O. COUCH             *Pro Hac Vice*
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
Email: fbaker@motleyrice.com; jledlie@motleyrice.com;
khermiz@motleyrice.com; csolomon@motleyrice.com; scouch@motleyrice.com

*Attorneys for the plaintiffs*

*(case caption continued on next page)*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PATRICK FEINDT, JR., Individually, and as Next Friend to his minor children P.G.F. and P.R.F, NASTASIA FREEMAN, Individually, and as Next Friend to her minor children, K.F., D.F., and N.F., JAMIE SIMIC, Individually, and as Next Friend to her minor children, M.S. and J.S.;<br><br>Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | CIVIL NO. 1:22-cv-397<br>(FEDERAL TORT CLAIMS ACT)<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' OPPOSITION TO PARTIAL MOTION TO DISMISS FIFTH AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1)**<br><br>HEARING: Feb. 2, 2024; 9:45 a.m.<br><br>JUDGE:  Hon. Leslie E. Kobayashi<br>TRIAL DATE:  April 22, 2024 |

**SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' OPPOSITION TO PARTIAL MOTION TO DISMISS FIFTH AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1)**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JESSICA WHALEY, AMANDA FEINDT, ELIZABETH THOMPSON-WATSON, BRIAN JESSUP, and DUSTIN WALLACE,<br><br>          Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>          Defendant. | CIVIL NO. 1:23-cv-457<br>(Federal Tort Claims Act)<br><br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' OPPOSITION TO PARTIAL MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1)**<br><br>JUDGE:  Hon. Leslie E. Kobayashi |

**SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' OPPOSITION TO PARTIAL MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1)**

# **TABLE OF CONTENTS**

I.      BACKGROUND ........................................................................................ 1

II.     ARGUMENT ............................................................................................. 4

    A.      The second prong of the discretionary function exception does not apply because public safety is not the type of policy analysis the DF exception is designed to protect. ............................................................................. 5

    B.      The second prong of the discretionary function exception is not satisfied because the Government had actual notice that its flushing was not working, and that water heaters needed replacement to prevent harm. . 10

    C.      Even if a remediation measure itself was subject to policy choices, the DFE does not permit negligent implementation of that measure........... 11

III.    CONCLUSION ........................................................................................ 12

## TABLE OF AUTHORITIES

**Cases**

*Alvarez v. United States*, No. 2:21-CV-09377-WLH-AS, 2023 WL 6192710 (C.D. Cal. Aug. 9, 2023) .................................................................................................. 4

*Burgess v. United States*, 375 F. Supp. 3d 796 (E.D. Mich. 2019) ........................... 6, 7

*Kennewick Irr. Dist. v. United States*, 880 F.2d 1018 (9th Cir.1989) .......................... 9

*Marlys Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208 (9th Cir. 2001) ............................................................................................................. 11

*Myers v. U.S., 17 F.3d 890 (6th Cir. 1994)* ................................................................ 10

*O'Toole v. United States*, 295 F.3d 1029 (9th Cir. 2002) ............................................. 5

*Soldano v United States*, 453 F.3d at 1151 (9th Cir.2006) .......................................... 9

*United States v. Varig Airlines*, 467 U.S. 797 (1984) ................................................... 6

*Walters v. City of Flint,* 627 F. Supp. 3d 734 (E.D. Mich. 2022) ........................ passim

*Whisnant v. United States*, 400 F.3d 1177 (9th Cir. 2005) .......................................... 9

*Williams v. United States*, 711 F. Supp. 2d 1195 (D. Haw. 2010) ............................. 12

The Court requested additional briefing on the application of the second prong of the DFE to four categories of remediation activities raised in the Fifth Amended Complaint ("5AC"): 1) implementation of an initial flushing program instructing residents to flush their water systems to remove contaminants; 2) the execution of a government-directed flushing program that employed junior servicemembers to flush Plaintiff homes; 3) the failure to replace contaminated plastics and premises plumbing – which exacerbated residents' exposure to contaminants when they returned to their homes; and 4) the failure to conduct air purification efforts to address persistent contaminants. 5AC at ¶¶ 51-59.

These negligent remediation activities are not shielded by the Discretionary Function Exception ("DFE") because they are not susceptible to the policy analysis the DFE was designed to protect. In virtually identical circumstances, courts have held that safety measures are not susceptible to policy analysis. Courts have also held that once the Government is on notice of a specific hazard to safety, the Government does not have "discretion" to turn a blind eye to the hazard. Furthermore, even if the Government enjoyed discretion in choosing whether or not to remediate, or whether or not to undertake any remediation activity, it could not undertake that activity negligently.

## I.    BACKGROUND

After the Government's negligent contamination of the water system at Red

1

Hill, it began a negligent remediation process. The Navy opened hydrants, and released contaminated water into residential areas, streets, yards, and storm drains. This runoff violated the Clean Water Act and created an environmental risk as it made its way into the ocean. The Department of Health (DOH) issued a cease-and-desist order to temporarily halt the Navy's flushing activities (5AC at ¶¶ 52-54).[1]

The Government's follow-on remediation protocol efforts also fell short. First, the Government implemented an initial flushing program and instructed residents to flush their *own* water systems to remove contaminants. That effort added fuel to the fire and "[s]ome residents reported that chemical fumes became overwhelming when they started flushing." 5AC at ¶ 51. Second, the Navy deployed a team of inexperienced personnel to flush the homes of residents. But the Plaintiffs will testify that many of those personnel *did not follow the Navy's protocols* and failed to meet the most basic standards of care:

> Many of the government personnel flushing these homes did so negligently, leaving water damage and more toxicity behind—causing further harm. . . Most flushing teams emptied water heaters directly into the yards—adding the toxins to the soil, which would then infiltrate the

---

[1] The Court recognized this as not within the scope raised by the Government's Partial Motion to Dismiss – and Plaintiffs understand they are not barred from bringing forth this evidence at trial. Order Granting in Part Defendant's Partial Motion to Dismiss Fifth Amended Complaint [ECF No. 210] and Directing Further Briefing at 13, ECF No. 275 (D. Haw. Feb. 14, 2024) ("These statues and regulations . . . are inapplicable to the portion of Count II alleging failure to properly remediate affected homes because flushing water into yards is not within the scope of that portion of Count II.").

2

groundwater and further contaminate the environment.

*Id.* at ¶ 51. Plaintiff "[f]amilies will testify that the flushing exacerbated their symptoms" or that they "experienced intense headaches when the Navy flushed their home." *Id.* at ¶ 51, ¶ 279. Plaintiff Sheena Jessup will testify:

> I called the Navy three times about the water in my home, and they came to "flush" the house again. But every time, the fumes would get even worse after the flushes, and we would notice an immediate increase in our symptoms. The young Marines who came to flush our water system didn't seem to know what they were doing. They flushed the water from our water heater right into the ally. They turned the water on for fifteen minutes, dumped the ice into the sink, and left. It was chaotic and seemingly pointless. It seemed like no one was in charge. I lost confidence in the people supposed to be helping us.

Third, the Navy did not inspect, remediate, or replace porous plastics at child development centers, despite notice from residents that these were sources of ongoing exposure to contaminants for their children. The Feindt family complained of this "secondary exposure" of children at the Child Development Center. 5AC at ¶ 88. This led to lingering psychological concern over the "full extent of the exposure of their children at . . . the Child Development Center." *Id.* at ¶ 93.

After the Navy drained the water heaters into the yards the Navy then failed to clean, remediate, or replace those water heaters. "Residents reported that sediment from the fuel remained in the bottom of the water heaters, and they continued to get burned during showers and experience other symptoms." *Id.* at ¶

3

59. Plaintiffs expressed these concerns, but they were never resolved. Kevin Aubert Dep. Transcript at 194, Ex. 3. Dr. Brewer noted persistent complaints of continued rashes among residents related to water heaters. Dr. Brewer Exposure Assessment at 9, Ex. 8. Even the Environmental Protection Agency ("EPA") report highlighted the need to address water heaters and premise plumbing problems with persistent contamination symptoms that continue to this day. EPA Report, Ex. 10. And the Navy failed to scrub contaminated air and "[a]ir tests of affected homes show that the aerosolized jet fuels were measurable weeks later." 5AC ¶ 51.

## II.    ARGUMENT

"The Government has the burden to satisfy the second step of the discretionary function analysis—that the judgment of how and when to remediate the fuel spill is 'of the kind that the discretionary function exception was designed to shield.'" *Alvarez v. United States*, No. 2:21-CV-09377-WLH-AS, 2023 WL 6192710, at *7 (C.D. Cal. Aug. 9, 2023). Here, Plaintiffs allege that the Navy breached the standard of care in remediation efforts after the Red Hill fuel release in at least four ways: 1) the Navy instructed residents to flush their own water systems; 2) inexperienced government personnel flushed Plaintiffs homes; 3) the Government failed to replace contaminated premises plumbing – which exacerbated residents' exposure to contaminants when they returned to their homes; and 4) the Government failure to conduct air purification efforts to address

4

persistent contaminants (5AC at ¶¶ 51-59).[2] It is the Government's burden to demonstrate the DFE applies to each of these activities.

A.   **The second prong of the discretionary function exception does not apply because public safety is not the type of policy analysis the discretionary function exception is designed to protect.**

The crux of the Government's argument is that its decisions regarding the remediation of the environmental hazards at Plaintiffs' homes were inherently policy-based and thus immunized by the DFE. This assertion misinterprets both the nature of the actions in question and the scope of the DFE. If the discretionary function exception is triggered any time the government has to balance "even two competing interests," then the exception would cover every decision ever made by the federal government. The Government's position illustrates what Judge Silverman once aptly called the "danger that the discretionary function exception will swallow the FTCA." *O'Toole v. United States*, 295 F.3d 1029, 1037 (9th Cir. 2002). It is not enough that the Navy had to balance competing considerations. The Court must look at the substance of those considerations and decide whether those

---

[2] The Government's argument that the initial flushing program was not addressed in the Opposition and is therefore waived, Def.'s Br. at 3 n.2, is burden shifting that has already been rejected by this Court. Order Granting in Part Defendant's Partial Motion to Dismiss Fifth Amended Complaint [ECF No. 210] and Directing Further Briefing, ECF No. 275 (D. Haw. Feb. 14, 2024) ("Again, it is Defendant's burden to demonstrate that the discretionary function exception applies. *See Terbush*, 516 F.3d at 1128. It is not the Court's responsibility to scour the SOP to determine which conduct within the remediation claim the SOP applies to.").

5

considerations were related to "social, economic, or political policy." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984).

The most factually similar case to this is *Burgess*, which addresses the EPA's response to the Flint crisis. *Burgess v. United States*, 375 F. Supp. 3d 796, 812 (E.D. Mich. 2019). The Court accepted that the first prong of the DFE was met and turned to the second: whether the Government's policy choices were susceptible to the type of policy analysis *that the DFE was "designed to protect*." *Id.* at 814 (citing *Berkovitz v. United States*, 486 U.S. 531, 536). The Court began its analysis presuming that the EPA's lack of action was grounded in considerations of public policy. *Id.* Defendants moved to dismiss under the discretionary function exception. *Id.* Plaintiffs argued that the decision not to intervene amidst a clear safety hazard should have been governed by objective scientific and professional standards when public safety was concerned. *Id.* The court agreed, determining that the EPA's failure to act was not a permissible exercise of policy choice but a neglect of safety standards that should have guided their response to the public health crisis. *Id.* at 816. The court held that actions directly impacting public health and safety, do not constitute policy decisions protected by the discretionary function exception.

The government made the exact same argument in *Burgess* as they do here. They claimed that the second prong of the DFE was satisfied by the emergency

nature of the response and that plaintiffs were engaged in "second-guess[ing]":

> EPA officials needed to make tough judgment calls based on complex policy, environmental, social, and economic issues to navigate SDWA's primacy regime and [its] numerous criteria…
>
> …
>
> Plaintiffs believe EPA's response was neither timely nor sufficient. . . . Plaintiffs may phrase their views in terms of how Region 5 should have or could have issued an emergency order prior to January 2016. The Court should not accept Plaintiffs' invitation to second-guess EPA's decisions or attempt to rebalance the competing policies implicated…

United States of America's Reply Memorandum in Support of Its Motion to Dismiss for Lack of Subject-Matter Jurisdiction at 13-14, *Burgess v. United States*, No. 4:17-cv-11218 (E.D. Mich. June 6, 2018). Despite the government's articulation of some basis for their policy decisions, the court rejected the idea that these articulated policies were shielded by the DFE, instead engaging in balancing: "This Court similarly cannot conceive of a public policy consideration that could be legitimately balanced against the need to warn and protect an entire community from involuntary and continued poisoning." *Burgess*, 375 F. Supp. 3d at 816.

Here, Plaintiffs likewise allege that the Government's handling of a water contamination crisis, which involved inadequate flushing programs, failure to replace contaminated premises plumbing, and neglect in cleaning the air of contaminants, was insufficient and failed to protect Plaintiffs. Just like in *Burgess*, the core of Plaintiffs' argument is that these government actions—or lack

7

thereof—were not driven by policy-based discretion intended to be protected.

Whether or not this conduct fell below the standard of care to constitute negligence will be a decision for the Court to make upon hearing the evidence. As the EPA Report demonstrates, the Government's initial and subsequent flushing programs were inadequate in removing contaminants effectively. While the Government has provided its flushing protocol – it has presented no evidence that the flushing protocol was actually followed at Plaintiffs' homes – Plaintiff Jessup's flushing team came for fifteen minutes and made things worse. The decision not to replace contaminated premises plumbing, which Plaintiffs and experts recognize exacerbated exposure, neglected objective safety criteria for the sake of decisions based on a broad claim of emergency. These actions mirror the EPA's failures in Flint, where delays and inaction jeopardized public health.

As a result, a decision on this issue would be premature before the Court hears the evidence. In *Walters v. City of Flint* the court again analyzed the second prong of the DFE. 627 F. Supp. 3d 734 (E.D. Mich. 2022). There, Flint residents sued the EPA, alleging that they were harmed by its negligent response to the Flint Water Crisis. *Id.* at 736. The court denied the government's motion to dismiss for lack of subject matter jurisdiction – noting that an interlocutory decision on a still-developing factual record was unsuitable. *Id.* at 737 ("If bad facts make bad law, undeveloped facts certainly do not improve matters."). The court also rejected the

8

argument that the government was shielded from liability under the DFE, because the EPA was not authorized by Congress "to consider 'public policy' in deciding how to give effect to the statute's directive." *Id.* at 741 (internal citations omitted). Here as in *Walters*, it is too early to make an appropriate determination on these four categories of negligence raised without a fuller factual development.

Indeed, the discretionary function exception does not apply to public safety decisions—even when the Government weighs competing interests: When deciding whether to eradicate toxic mold at a commissary, the Navy had to weigh the time and money it would take against the health benefits for its employees. *Whisnant v. United States*, 400 F.3d 1177, 1183 (9th Cir. 2005) (finding second prong of DF not met because case involved matter of public safety). The National Park Service had to balance added convenience to park visitors against risks to their safety when it decided to increase the speed limit on a park road. *See Soldano v United States*, 453 F.3d at 1151 (9th Cir.2006) (same). The United States Bureau of Reclamation had to balance safety against efficiency when it decided whether to excavate unsuitable materials from underneath the embankments of the Kennewick canal. *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1030–32 (9th Cir.1989).

**B.    The second prong of the discretionary function exception is not satisfied because the Government had actual notice that its flushing was not working, and that water heaters needed replacement to prevent harm.**

When the Government has actual <u>notice</u> of public health and safety problems and fails to take action, the second prong of the discretionary function exception "clearly could not apply." *Walters*, 627 F. Supp. 3d 734 at 742. In *Myers v. U.S., 17 F.3d 890 (6th Cir. 1994)*, the Sixth Circuit analyzed the potential liability of the United States under the FTCA for the deaths of miners in a 1981 methane explosion at a Tennessee coal mine operated by Grundy Mining Company. *Id.* at 892. The Mine Safety and Health Administration (MSHA) inspectors later identified several safety violations that contributed to the disaster. *Id.* at 893. Plaintiffs argued that MSHA officials failed to perform specific duties related to mine safety, leading to liability under "negligence per se" or "Good Samaritan" doctrines. *Id.* The government contended that the actions of MSHA inspectors were protected by the DFE. *Id.* The Sixth Circuit held that the DFE's second prong did not apply. *Id.* at 897 ("We hold that neither the Act nor the MSHA regulations authorize mine safety inspectors to conduct their inspections on the basis of 'social, economic or political policy.'").

The *Walters* court analyzed *Myers* and emphasized how the case would have been even easier to decide if the MSHA had <u>notice</u> of the safety violations.

In *Myers*, inspectors from the Mine Safety and Health Administration failed to notice serious safety risks. . . As the Sixth Circuit pointed out

10

in *Myers*, the case against the inspectors would have been even clearer if they had "actually found safety violations in the...mine but then failed to take the required action." In such a case the discretionary function clearly could not apply. After all, the statute required inspectors to close the mine if safety violations had been detected. That was "an absolute duty" imposed by the statute, and a failure to comply with it could not be "a protected exercise of policy discretion."

*Walters*, 627 F. Supp. 3d 734 at 742 (internal citations omitted).

Here, the Government had actual notice that it had failed to properly remediate. Residents like the Feindts and the Jessups and the Auberts complained repeatedly. The EPA report demonstrates continued hydrocarbon contamination at residents' homes – and multiple requests to address premises plumbing. Just as in *Walters*, "[i]n such a case the discretionary function clearly could not apply." *Id.*

C.    **Even if a remediation measure itself was subject to policy choices, the DFE does not permit negligent implementation of that measure.**

Once the Government chose to remediate, or chose to undertake any of the four actions at issue here, the Government could not then do so negligently. "The Government cannot claim that both the decision to take safety measures and the negligent implementation of those measures are protected policy decisions. This argument would essentially allow the Government to immunize itself from tort liability under applicable state law as a matter of 'policy.'" *Marlys Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208, 1215 (9th Cir. 2001).

For example, in *Walters*, the court held that the plaintiffs' FTCA claims

11

against the EPA survived the EPA's motion to dismiss because of the state's Good Samaritan or negligent undertaking law. Once the Government undertook to remediate the water contamination for Flint's residents, it did so negligently, thereby increasing the Flint residents' risk of harm. Likewise, Hawaii's Good Samaritan liability arises when one voluntarily undertakes a duty, and fails to perform it with due care. *Williams v. United States*, 711 F. Supp. 2d 1195, 1207 (D. Haw. 2010).

Here, the Government chose to remediate. Even if they had discretion to do so initially under prong one or two of the DFE, once undertaken they were not permitted to do so negligently. The Plaintiffs will testify that the flushing program exacerbated their symptoms, that government personnel were there for fifteen minutes, that they flushed into yards, that the house remained contaminated, and they had to call back repeatedly. They will testify that they experienced continued rashes from water heaters that were never replaced, and that the system is still contaminated. The DFE does not bar this Court from considering any of that.

## III.   CONCLUSION

Because the decisions and failures alleged by the Plaintiffs do not involve the kind of policy discretion that the DFE was designed to protect, the Government's motion to dismiss based on the discretionary function exception should be denied.

12

DATED:  Honolulu, Hawaii, March 6, 2024.

/s/ Lyle S. Hosoda
LYLE S. HOSODA
KOURTNEY H. WONG
SPENCER J. LAU

/s/ Kristina S. Baehr
KRISTINA S. BAEHR
JAMES BAEHR
MARY M. NEUSEL

/s/ Frederick C. Baker
FREDERICK C. BAKER
CYNTHIA A. SOLOMON
JAMES W. LEDLIE
KRISTEN HERMIZ
SARA O. COUCH

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed and served on counsel of record via the U.S. District Court's CM/ECF electronic filing system.

/s/ Kristina S. Baehr
Kristina S. Baehr

13