IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PATRICK FEINDT, JR., et al., | CIVIL NO. 22-cv-00397-LEK-KJM |
| Plaintiffs, | MEMORANDUM IN SUPPORT OF MOTION TO DISMISS *WHALEY* FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT-MATTER JURISDICTION |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |
| JESSICA WHALEY, et al., | CIVIL NO. 23-cv-00457- LEK-KJM |
| Plaintiff, | |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |
| JACLYN HUGHES, et al., | CIVIL NO. 24-cv-00059-LEK-KJM |
| Plaintiffs, | |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
*WHALEY* FIRST AMENDED COMPLAINT FOR
LACK OF SUBJECT-MATTER JURISDICTION**

# TABLE OF CONTENTS

**PAGE(s)**

INTRODUCTION ..................................................................................................1

FACTS ..................................................................................................................1

PROCEDURAL HISTORY...................................................................................4

LEGAL STANDARD...........................................................................................5

ARGUMENT ........................................................................................................5

I.   Plaintiffs' Claims Are Meaningfully Indistinguishable from *Feres* Itself, and Therefore the Court Should Hold that the *Feres* Bar Applies.........................8

II.  Even If the Court Were to Apply the Ninth Circuit's Four-Factor Test, It Should Still Conclude that the *Feres* Bar Applies. .......................................12

   A.  Factor 1 (Place Where the Tortious Act Occurred) Weighs in Favor of the *Feres* Bar..................................................................................12

   B.  Factor 2 (Duty Status) Weighs in Favor of the *Feres* Bar. .....................15

   C.  Factor 3 (Benefits Accruing Due to Status as a Service Member) Weighs in Favor of the *Feres* Bar........................................................16

   D.  Factor 4 (Nature of the Activities When Tortious Act Occurred) Weighs in Favor of the *Feres* Bar. ........................................................20

CONCLUSION...................................................................................................23

# TABLE OF AUTHORITIES

**PAGE(s)**

**Cases**

*Barranco v. 3D Sys. Corp.*,
  No. CV 13-00412 LEK-RLP, 2018 WL 4323895 (D. Haw. Sept. 10, 2018)....4, 5

*Bennett v. United States*,
  44 F.4th 929 (9th Cir. 2022)................................................................................5

*Bon v. United States*,
  802 F.2d 1092 (9th Cir. 1986)................................................................ 14, 15, 17

Camp Lejeune.,
  19 F.4th 421 (4th Cir. 2021)................................................................ 8, 9, 11, 14

*Castro v. United States*,
  710 Fed. App'x 732 (9th Cir. 2017).....................................................................7

*Costo v. United States*,
  248 F.3d 863 (9th Cir. 2001)..................................................................... passim

*Daniel v. United States*,
  889 F.3d 978 (9th Cir. 2018)................................................................... 7, 11, 15

*Dreier v. United States*,
  106 F.3d 844 (9th Cir. 1996)...................................................................... 14, 16

*Est. of McAllister v. United States*,
  942 F.2d 1473 (9th Cir. 1991)..............................................................................7

*Feres v. United States*,
  340 U.S. 135 (1950) .................................................................................. passim

*Flowers v. First Hawaiian Bank*,
  289 F. Supp. 2d 1213 (D. Haw. 2003) ............................................................6, 18

*Foster v. Dep't of the Navy*,
  No. 5:19-CV-429-FL, 2020 WL 1542092 (W.D.N.C. Mar. 31, 2020).................9

iii

*Gros v. United States*,
   232 F. App'x 417 (5th Cir. 2007)............................................................ 9, 11, 14

*Jackson v. United States*,
   110 F.3d 1484 (9th Cir. 1997)..................................................................18

*Johnson v. United States*,
   704 F.2d 1431 (9th Cir. 1983)..................................................................12

*Lanus v. United States*,
   492 F. App'x 66 (11th Cir. 2012).......................................................... 10, 17

*Latchum v. United States*,
    183 F. Supp. 2d 1220 (D. Haw. 2001) .................................................. 13, 14, 17

*McConnell v. United States*,
   478 F.3d 1092 (9th Cir. 2007).................................................................7, 15

*McCoy v. Hawai'i Dep't of Hum. Serv.*,
   CIV. NO. 21-00063 LEK-RT, 2021 WL 5040197 (D. Haw. Oct. 29, 2021) ........5

*Monaco v. United States*,
   661 F.2d 129 (9th Cir. 1981)...................................................................20

*Persons v. United States*,
   925 F.2d 292 (9th Cir. 1991)................................................................ 15, 17

*Preferred Ins. Co. v. United States*,
   222 F.2d 942 (9th Cir. 1955)...................................................................16

*Ritchie v. United States*,
   733 F.3d 871 (9th Cir. 2013)............................................................. 5, 6, 7, 20

*Ruggiero v. United States*,
   162 F. App'x 140 (3d Cir. 2006)...............................................................10

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004)...................................................................5

*Schoenfeld v. Quamme*,
   492 F.3d 1016 (9th Cir. 2007)..................................................................16

*Stencel Aero Engineering Corp. v. United States*,
  431 U.S. 666 (1977) ................................................................ 6, 12, 20

*United States v. Johnson*,
  481 U.S. 681 (1987) ........................................................... 6, 18, 19, 20

*United States v. Stanley*,
  483 U.S. 669 (1987) ...........................................................................6

*Latchum v. United States*,
  65 F. App'x 171 (9th Cir. 2003) .................................................. 13, 18

*Veillette v. United States*,
  615 F.2d 505 (9th Cir. 1980)....................................................... 14, 17

**Rules**

Fed. R. Evid. 201(b)............................................................................21

## INTRODUCTION

The *Whaley* Plaintiffs—nearly 1,000 active-duty service members—bring this Federal Tort Claims Act (FTCA) action to challenge the U.S. Navy's operation of a strategic military fuel reserve (Red Hill) at Joint Base Pearl Harbor-Hickam (JBPHH), the United States' response to a 2021 fuel spill at Red Hill, and alleged personal injuries occurring in Plaintiffs' military housing from that military accident. Such claims "arise out of or are in the course of activity incident to service," and are thus barred under the FTCA. *Feres v. United States*, 340 U.S. 135, 146 (1950).

As detailed below, the *Feres* doctrine deprives this Court of subject-matter jurisdiction over the *Whaley* Plaintiffs' claims for two reasons. First, Plaintiffs' allegations closely mirror those that the U.S. Supreme Court held in *Feres* were beyond the scope of the FTCA's limited waiver of sovereign immunity, such as the military's alleged negligence resulting in injuries to off-duty servicemembers sustained in their military housing. In analogous water contamination cases, Courts of Appeals have uniformly held that the *Feres* bar applied. Second, even under the Ninth Circuit's four-factor test for determining whether *Feres* applies in close cases (this is not a close case), the Court should reach the same conclusion.

## FACTS

Plaintiffs are active-duty military personnel who were stationed at JBPHH in November 2021. *Whaley*, 23-cv-457, Dkt. No. 236 (First Am. Compl. (FAC)) at p.

1

xxii-xxiii. Plaintiffs allege that they resided in JBPHH military housing due to their military service and that the United States owned and operated this military housing as part of a public-private venture. *Id.* at p. xxii & xxiii; ¶¶ 9, 63, 71, 78, 86, & 93.

Since World War II, Red Hill—a facility comprising 20 large underground fuel storage tanks—has been a critical part of the U.S. military's strategic fuel reserves in the Pacific. FAC ¶ 6. On May 6, 2021, two piping joints at Red Hill ruptured during a fuel transfer, spilling jet fuel. *Id.* ¶¶ 11–12, 20. Most of the fuel was collected in a sump pump and then transferred to a retention line. *Id.* ¶ 20. On November 20, 2021, a train cart struck the retention line, resulting in another fuel spill (the "November 2021 spill"). *Id.* Plaintiffs allege that some fuel subsequently entered the JBPHH drinking water system. *Id.* Plaintiffs allege that, because of the November 2021 spill, they "showered, bathed, drank, and cooked food with the contaminated water" in "their homes." *Id.* at p. xxiii.[1]

Plaintiffs allege that the May 6, 2021 piping rupture resulted from Navy employees' actions "in violation of their operations orders" and U.S. Department of War requirements. FAC p. xxii, ¶¶ 13, 14, 22, 50. Plaintiffs further allege that Navy

---

[1] Plaintiffs also only allege injuries from the November 2021 spill forward. FAC ¶¶ 101-1094 (alleging for all that alleged injuries were "a direct and proximate result of the Government's negligence in causing the November 20 incident and its aftermath . . . .").

employees then failed to follow corrective actions identified by the Navy in an October 2021 report, resulting in the November 2021 spill. *Id.* ¶ 15.

Plaintiffs allege numerous acts or omissions by military "officers" in response to the November 2021 spill. *Id.* ¶¶ 1098(f)-(i) & 1112(f)-(j). They also allege that senior Navy leaders, including the Commander of JBPHH and the Deputy Commander of the U.S. Pacific Fleet, failed to adequately inform Plaintiffs and other "residents in military housing" of the scope of the spill. *Id.* ¶¶ 35, 38.

Plaintiffs assert five claims against the United States. In Count I, Plaintiffs allege that the United States was negligent in its "operation and maintenance of the Red Hill Bulk Fuel Storage Facility." *Id.* ¶ 1097. Plaintiffs allege that the United States breached this duty because, *inter alia*, it violated the operations orders for Red Hill, failed to warn service-member Plaintiffs of the scope of the November 2021 fuel spill, and "ordered junior service members to flush" pipes with contaminated water. *Id*. In Count II, Plaintiffs assert a claim of negligent undertaking on the same bases, as well as the United States' failure to "properly remediate" affected homes. *Id.* ¶ 1112. In Count III, Plaintiffs assert a claim for nuisance on the basis that the United States' management of the November 2021 spill created a condition that interfered with Plaintiffs' right to enjoy their military housing. *Id.* ¶ 1120. Count IV asserts a claim for negligent infliction of emotional distress regarding the spill. *Id.* ¶ 1132. Lastly, Count V asserts a claim for premises liability and alleges, *inter alia*,

3

that: "The United States is the occupier, owner, and possessor of . . . the Red Hill Bulk Fuel Storage Facility, the [JBPHH] water system, and the housing which Plaintiffs leased and resided upon" and that Red Hill "was in dangerous proximity to persons on the land that [the United States] possessed, including Plaintiffs." *Id.* ¶¶ 1139 & 1149; *id.* ¶ 9 ("The Navy also owns and operates . . . military housing that is run as a public-private venture.").

## PROCEDURAL HISTORY

In March 2024, the Court dismissed, with prejudice, the *Whaley* Plaintiffs' failure-to-warn claims in Counts I and II due to the FTCA's misrepresentation exception. Dkt. No. 54 at 7-12. The Court also dismissed for failure to state a claim Plaintiffs' claims regarding failure to properly remediate affected homes (Count II) and failure to test water samples for petroleum (Counts I and II), granting Plaintiffs leave until April 29, 2024, to amend their complaint to cure "the defects identified in this Order." *Id.* at 12-13. Plaintiffs elected not to do so. Instead, Plaintiffs filed the First Amended Complaint (FAC) on August 11, 2025, adding 989 Plaintiffs and maintaining the dismissed claims. In a January 6, 2026 meet-and-confer, Plaintiffs indicated that they are not relitigating these dismissed claims and included them in the FAC to preserve their arguments for appeal.[2]

---

[2] Given Plaintiffs' decision not to amend those claims and their representation that they are not seeking to relitigate the Court's dismissal of these claims, the United States incorporates its prior arguments here and the Court should again dismiss them.

## LEGAL STANDARD

"Federal Rule of Civil Procedure 12(b)(1) authorizes a defendant to move for dismissal of an action for 'lack of subject-matter jurisdiction[.]'" Dkt. No. 54 at 5. "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Id.* (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). Here, the United States presents a facial attack, in which "the court may dismiss a complaint when its allegations are insufficient to confer subject matter jurisdiction, and a complaint's factual allegations are taken as true and construed in the light most favorable to the nonmoving party." *Id.* (quoting *McCoy v. Hawai'i Dep't of Hum. Serv.*, CIV. NO. 21-00063 LEK-RT, 2021 WL 5040197, at *3 (D. Haw. Oct. 29, 2021)).

## ARGUMENT

"The FTCA provides a limited waiver of the Government's sovereign immunity for tort claims." *Bennett v. United States*, 44 F.4th 929, 933 (9th Cir. 2022). One such limitation of this waiver is that "'the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service.'" *Ritchie v. United States*, 733 F.3d 871, 874 (9th Cir. 2013) (quoting *Feres v. United States*, 340 U.S. 135, 146 (1950)).

---

*See Barranco v. 3D Sys. Corp.*, No. CV 13-00412 LEK-RLP, 2018 WL 4323895, at *4 (D. Haw. Sept. 10, 2018) (Kobayashi, J.) (refusing to "revisit[] the law of the case").

This limitation—arising from the synonymous Supreme Court precedent—is known as the *Feres* doctrine. In *Feres*, the "[d]ecedent perished by fire in the barracks at Pine Camp, New York, while on active duty in service of the United States." 340 U.S. at 137. The decedent's estate sued the United States under the FTCA and alleged "[n]egligence . . . in quartering [Feres] in barracks known or which should have been known to be unsafe because of a defective heating plant, and in failing to maintain an adequate fire watch." *Id.* The Supreme Court dismissed these claims, holding "that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service" and therefore dismissed the case. *Id.* at 146.

> [T]he *Feres* doctrine is rooted in three policy rationales:
>
> (1) the distinctively federal nature of the relationship between the government and members of its armed forces, which argues against subjecting the government to liability based on the fortuity of the situs of the injury; (2) the availability of alternative compensation systems; and (3) the fear of damaging the military disciplinary structure.

*Ritchie*, 733 F.3d at 874 (quoting *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 671-72 (1977)).[3] Consistent with the Supreme Court's direction in its

---

[3] *See also Flowers v. First Hawaiian Bank*, 289 F. Supp. 2d 1213, 1217–18 (D. Haw. 2003) ("[T]he existence of 'generous statutory disability and death benefits is an independent reason why the *Feres* doctrine bars suit for service-related injuries;'" "[t]hat is, benefits under the Veterans' Benefits Act essentially preclude additional remedies under the FTCA.") (quoting *United States v. Johnson*, 481 U.S. 681, 690 (1987)).

6

most recent *Feres* cases, however, *see United States v. Johnson*, 481 U.S. 681, 686-692 (1987), and *United States v. Stanley*, 483 U.S. 669, 681-684 (1987), the Ninth Circuit has eschewed an approach to *Feres* that requires examining whether one or more of these rationales is present in any given case. Instead, the Ninth Circuit applies a four-factor test to compare the plaintiff's case to prior *Feres* cases. *E.g.*, *Daniel v. United States*, 889 F.3d 978, 981-982 (9th Cir. 2018); *McConnell v. United States*, 478 F.3d 1092, 1095 (9th Cir. 2007); *Costo v. United States*, 248 F.3d 863, 867 (9th Cir. 2001); *Est. of McAllister v. United States*, 942 F.2d 1473, 1477 (9th Cir. 1991). Those four factors are:

1) the place where the tortious act occurred;

2) the duty status of the plaintiff when the tortious act occurred;

3) the benefits accruing to the plaintiff because of his or her status as a service member; and

4) the nature of the plaintiff's activities at the time the tortious act occurred.

*Daniel*, 889 F.3d at 981. The Ninth Circuit examines the totality of the circumstances in scrutinizing those factors, *see id.*, but examination of those factors is unnecessary where the claim is clearly barred by precedent, *see id.* at 981-82 (no need to address four factors because medical malpractice claim clearly barred by prior precedent); *Ritchie*, 733 F.3d at 876 (claim challenging military orders barred by Ninth Circuit

7

precedent); *Castro v. United States*, 710 Fed. App'x 732 (9th Cir. 2017) (claim facially challenging management of military barred by Supreme Court precedent).

In this case, the alleged facts mirror those of *Feres* itself, and so the *Feres* bar clearly applies, and the Court need not examine the four factors. Even if the Court were to examine these four factors, it should still conclude that the *Feres* bar applies.

## I. Plaintiffs' Claims Are Meaningfully Indistinguishable from *Feres* Itself, and Therefore the Court Should Hold that the *Feres* Bar Applies.

Plaintiffs' alleged facts and claims closely resemble those presented in *Feres* and therefore are barred. *Compare Feres*, 340 U.S. at 137 (alleging "[n]egligence . . . in quartering [Feres] in barracks known or which should have been known to be unsafe because of a defective heating plant, and in failing to maintain an adequate fire watch"), *with* FAC ¶¶ 63, 71, 78, 86 & 93 (alleging injuries suffered in "military housing" from the water supply being contaminated by the Navy's negligence resulting in the November 2021 spill) & *id.* ¶ 1149 (alleging the United States controlled "jet fuel at Red Hill" "that it knew or had reason to know was in dangerous proximity to persons on the land that it possessed, including Plaintiffs").

While the Ninth Circuit does not appear to have analyzed *Feres* in a water-contamination context, at least two Courts of Appeals have applied the *Feres* bar under such circumstances. In *Clendening v. United States*, the Fourth Circuit concluded that the *Feres* doctrine barred wrongful death claims relating to allegedly

contaminated drinking water that servicemen and their families consumed in base housing at Camp Lejeune. 19 F.4th 421, 428 & 428-31 (4th Cir. 2021) (collecting district court cases reaching the same conclusion). In doing so, the Fourth Circuit noted that "it is hard to see how Plaintiff's exposure claims are meaningfully different from *Feres* itself," as *Feres* also involved allegations that the military's negligence caused injuries to active duty servicemembers while in military housing. *Id.* at 428 (finding "the military's provision of water and accommodations to its troops is clearly activity 'incident to service'"); *see also Foster v. Dep't of the Navy*, No. 5:19-CV-429-FL, 2020 WL 1542092 at *3 (E.D.N.C. Mar. 31, 2020) (barring case that was "indistinguishable from *Feres* itself," as servicemember plaintiff allegedly suffered personal injuries after consuming contaminated drinking water while stationed at Camp Lejeune).[4]

Likewise, in *Gros v. United States*, the Fifth Circuit affirmed the district court's decision that *Feres* barred an active-duty servicemember's claims "that he was exposed to toxic chemicals while showering or drinking water at his home on the base." *Compare* 232 F. App'x 417, 418 (5th Cir. 2007), *with* FAC at p. xxiii (alleging that Plaintiffs "showered, bathed, drank, and cooked food with the

---

[4] In 2022, Congress enacted the Camp Lejeune Justice Act (CLJA), which, *inter alia*, "expressly precluded particular [FTCA] defenses and immunities on which the Navy had previously relied to contest claims arising from contaminated water at Camp Lejeune," such as "the *Feres* doctrine." *Pugh v. United States*, No. 7:22-CV-124-BO-BM, 2023 WL 1081262, at *4 (E.D.N.C. Jan. 27, 2023).

contaminated water" in their military housing). The Fifth Circuit agreed with the district court that "there is little to distinguish this case from *Feres* itself." *Gros*, 232 F. App'x at 419 ("In *Feres*, the Supreme Court held that a serviceman was acting incident to service when he was killed in a fire while off-duty and sleeping in his barracks. . . . Because Gros was on active duty status and on base when his injuries occurred, similar to the plaintiff in *Feres*, his injuries were incident to service and his suit is barred.").

The Courts of Appeals also have applied the *Feres* bar to other types of injuries servicemembers sustained in their military housing. *E.g.*, *Ruggiero v. United States*, 162 F. App'x 140, 142 (3d Cir. 2006) (applying *Feres* to bar claims arising from servicemember falling to his death from his housing at the Naval Academy because "[t]he similarities between Feres' death and Ruggiero's are clear"). For instance, in *Lanus v. United States*, the Eleventh Circuit held that the *Feres* bar applied to claims arising from a servicemember's death in a fire in his military housing, noting that they saw "no meaningful distinction between the facts before us and the facts before the *Feres* Court." 492 F. App'x 66, 70 (11th Cir. 2012). In reaching this conclusion, the *Lanus* court found that the decedent was on "liberty"—*i.e.*, "nights and weekends 'off' in the sense that the serviceman, though on active duty, is simply not required to perform duties at that time"—"does not materially distinguish *Feres*." *Id.* at 69-70 ("Though *Feres* does not go into detail, the

10

decedent's status in *Feres* (on active duty and sleeping between on-duty shifts) is functionally similar to the active-duty liberty status attributed to Serviceman Lanus."). Second, the *Lanus* court found "[t]hat Serviceman Lanus's on-base housing occasionally provided a roof for civilian government employees . . . also fails to differentiate the case from *Feres*." *Id.* at 70 ("The *Feres* Court made no mention of whether the decedent's barracks also housed civilians from time to time, and the relevance of the distinction remains unclear.").

At bottom, Feres' claim was for injuries resulting from the Army's provision of "barracks known or which should have been known to be unsafe." *Feres*, 340 U.S. at 155. Likewise, here, Plaintiffs' fundamental allegations are that the Navy is liable for "creating a condition at the plaintiffs' residences" and that, as a result, they suffered injuries in their "contaminated military home[s]." FAC ¶¶ 66, 89, 1120. As in *Clendening* and *Gros*, "it is hard to see how Plaintiff's exposure claims are meaningfully different from *Feres* itself." *Clendening*, 19 F.4th at 428; *see also Gros*, 232 F. App'x at 418 & 419. Because these factual similarities make clear that Plaintiffs' claims arising from hazards in military housing are "incident to military service," the Court should dismiss Plaintiffs' claims pursuant to *Feres*.

**II.    Even If the Court Were to Apply the Ninth Circuit's Four-Factor Test, It Should Still Conclude that the *Feres* Bar Applies.**

Plaintiffs' claims are also barred under the Ninth Circuit's four-factor "totality of the circumstances" *Feres* test because Plaintiffs sustained their alleged injuries "incident to military service." *Daniel*, 889 F.3d at 981.

**A.    Factor 1 (Place Where the Tortious Act Occurred) Weighs in Favor of the *Feres* Bar.**

The first factor—"the place where the tortious act occurred"—weighs strongly in favor of applying the *Feres* bar for at least three reasons. *Id.*

First, even if the Court were to view this factor in terms of where the injury occurred (and not the tortious act, *but see infra* at 13-14), this factor weighs in favor of applying *Feres* because Plaintiffs were allegedly injured on military property. For example, in *Latchum v. United States*, the court held that *Feres* barred the claims of the family and estate of an active duty servicemember who was "fatally shot by a person who was not in the military as [the decedent] stood on the porch of the cabin he and his family were renting" at the Waianae Army Recreational Center (WARC). 183 F. Supp. 2d 1220, 1232 (D. Haw. 2001), *aff'd,* 65 F. App'x 171 (9th Cir. 2003). In doing so, the *Latchum* court held that because "Latchum was killed on a military facility," the first "factor thus weighs in favor of a *Feres* bar in the present case." *Id.* at 1231-32; *see also Dreier v. United States*, 106 F.3d 844, 852 (9th Cir. 1996), *as amended* (Feb. 4, 1997) (Decedent's "presence on the base at the time of his death

12

weighs in favor of a *Feres* bar"); *Bon v. United States*, 802 F.2d 1092, 1095 (9th Cir. 1986) (location of boating accident near Naval Special Services Center weighed in favor of applying *Feres*). Under Plaintiff's own theory, their injuries were incurred in military housing of which the United States is the "occupier, owner, and possessor." FAC ¶ 1139. Accordingly, "it is hard to see how Plaintiff's exposure claims are meaningfully different from *Feres* itself." *Clendening*, 19 F.4th at 428; *see also Gros*, 232 F. App'x at 419 (finding that the active-duty plaintiff injured on base was similar to Feres, who was likewise injured "while off-duty and sleeping in his barracks"); *supra* at 8-11. Plaintiffs' military housing parallels, *inter alia*, the barracks in *Feres*, the cabin in *Latchum*, and the military housing in *Clendening* and *Gros*.

Second, while the First Amended Complaint suggests that Plaintiffs will argue that *Feres* does not apply because Plaintiffs were injured in their military housing, FAC at p. xxiii, the "more important[]" question is where the alleged negligence occurred. *Latchum*, 183 F. Supp. 2d at 1232; *see also Costo v. United States*, 248 F.3d 863, 868 (9th Cir. 2001) (for the first factor, the "appropriate consideration is the 'situs of the negligence,' not the location of the accident"). For example, the *Latchum* court held that the first factor also weighed in favor of applying *Feres* because "Plaintiffs allege inadequate security (fences, lighting, patrols, etc.) at WARC" and "[s]ecurity decisions at WARC were ultimately made by military

personnel." *Id.* at 1232; *see also* 65 F. App'x 171, 172 (9th Cir. 2003) (affirming the *Feres* bar in part because "[t]he negligence alleged in the complaint, inadequate security, occurred as a result of decisions made by military personnel."). The Ninth Circuit reached the same conclusion in *Costo*: "Nor is our decision affected by the fact that the accident occurred off-base. The appropriate consideration is the 'situs of the negligence,' not the location of the accident. Here, much of the alleged negligence was supervisory, and occurred on base." 248 F.3d at 868 (citation omitted).

Similarly, in this case, Plaintiffs allege that the Navy's acts or omissions at Red Hill are the but-for cause of their injuries. FAC ¶ 1158 ("But for the conduct of the federal officers at Red Hill, the plaintiff[s] . . . would not have suffered inconvenience, illness, economic injury, and fear."). Plaintiffs also allege that the United States "is the occupier, owner, and possessor of the . . . Red Hill Bulk Fuel Storage Facility," *id.* ¶ 1139, which served "to maintain strategic fuel reserves in the Pacific," *id.* ¶ 6. Plaintiffs' allegations focus on the Navy's acts or omissions on base at Red Hill. *E.g.*, *id.* ¶¶ 4-7, 11-24, 41-47, 50, 1096-1098, 1112, 1120, 1123.

Red Hill's status as a strategic fuel reserve for the Navy renders it "distinctively federal in character," and therefore "the first factor considered in *Feres* operates with equal force in this case." *Stencel Aero Eng'g Corp. v. United States*, 431 U.S. 666, 672 (1977). Red Hill—and JBPHH more generally—"perform[ed] a

14

unique, nationwide function in protecting the security of the United States." *Id.*
("Significant risk of accidents and injuries attend such a vast undertaking."). That
security function is why Plaintiffs were deployed to Oahu. FAC at p. xxii. Therefore,
unlike *Johnson v. United States*, "the connection between the situs of the negligence
and [Plaintiffs'] military service is" not "tenuous." 704 F.2d 1431, 1437 (9th Cir.
1983) (working as a bartender at an officers' club on base). In conclusion, under
Plaintiffs' "theory of this suit," their injuries are "attributable to the negligence of
personnel at the Navy['s Red Hill Facility]," and so "*Feres* . . . is the applicable
precedent." *Veillette v. United States*, 615 F.2d 505, 507 (9th Cir. 1980).

For all these reasons, the first factor weighs heavily in favor of the *Feres* bar.

## B.    Factor 2 (Duty Status) Weighs in Favor of the *Feres* Bar.

The second factor—"the duty status of the plaintiff when the tortious act
occurred," *Daniel*, 889 F.3d at 981 (citation omitted)—also weighs in favor of
applying the *Feres* doctrine because Plaintiffs were active duty servicemembers.
FAC at p. xxiii & xxiii; ¶¶ 63, 71, 78, 86, & 93; *see also Persons v. United States*,
925 F.2d 292, 296 n.6 (9th Cir. 1991) (noting that the principal relevant distinction
regarding duty status "runs between servicepersons who are on 'active duty' and
those who have been discharged or are on furlough, not between 'off-duty' and 'on-
duty' servicepersons").

15

Although Plaintiffs allege that they were exposed only while off duty in their homes, *id.* at p. xxiii, the Ninth Circuit has consistently applied the *Feres* bar where service members were off duty when injured but engaged in activity that benefited their active-duty status. *See*, *e.g.*, *McConnell*, 478 F.3d at 1096-1098 (waterskiing accident); *Costo*, 248 F.3d at 868-869 (recreational rafting trip); *Bon v. United States*, 802 F.2d 1092, 1093 (9th Cir. 1986) (recreational canoe accident). Here, Plaintiffs were allegedly injured while present in military housing that was provided to them because of their active-duty status. *See infra* at 17-18. *Feres* thus applies here for the same reasons it barred suit in *Feres* itself, where the servicemember also was off duty when he was injured while sleeping in his barracks. Accordingly, cases where an off-duty service member was not engaged in activity that was related or that benefitted active-duty status, *e.g.* *Schoenfeld v. Quamme*, 492 F.3d 1016, 1023 (9th Cir. 2007); *Dreier*, 106 F.3d at 853, are inapposite.

In conclusion, the second factor weighs in favor of applying the *Feres* bar.

## C.    Factor 3 (Benefits Accruing Due to Status as a Service Member) Weighs in Favor of the *Feres* Bar.

In evaluating *Feres*'s third factor, some cases "have considered as relevant the benefit of being permitted to participate in the activity that led to the injury," while others have "held that compensation received on account of the resulting injury is a

16

'benefit' of military status," *Schoenfeld*, 492 F.3d at 1024 (citations omitted). Both sub-parts of this factor weigh in favor of applying the *Feres* bar.

### 1. Plaintiffs' Access to Military Housing.

"[I]t has long been recognized—in [the Ninth Circuit], at least—that military-sponsored activities fall within the *Feres* doctrine, regardless of whether they are related to military duties." *Costo*, 248 F.3d at 868.

Plaintiffs acknowledge that they were allowed to reside in military housing owned, occupied, and possessed by the United States because of their active-duty military status. *See* FAC at p. xxii; *id* ¶¶ 63, 78, 83, 86; *see also id.* ¶¶ 9 & 1139. This factor thus cuts strongly in favor of applying the *Feres* bar to Plaintiffs' claims. *See Preferred Ins. Co. v. United States*, 222 F.2d 942, 948 (9th Cir. 1955) ("[A]t the time of damage the personal property of a serviceman is located on a military base solely by virtue of the active military service of the owner, and the damage results directly from operations in military service, we hold that the damage does arise out of and occurs in the course of activity incident to the military service of the owner").

That civilians (such as servicemember's family and other civilian government employees) also have access to military housing, *see, e.g.*, FAC at p. xxiii, does not alter that conclusion, *see Lanus*, 492 F. App'x at 70 ("That Serviceman Lanus's on-base housing occasionally provided a roof for civilian government employees, however, also fails to differentiate the case from *Feres*. The *Feres* Court made no

17

mention of whether the decedent's barracks also housed civilians from time to time, and the relevance of the distinction remains unclear.").

Importantly, the Ninth Circuit applies the *Feres* bar even when "civilians as well as military personnel" have access to the relevant service. *Veillette*, 615 F.2d at 507 ("[W]e must reject appellants' argument that Airman Veillette's injuries were not incident to service because civilians as well as military personnel are sent to the Naval hospital on Guam.") (citation omitted). That is because the relevant inquiry is whether the benefit—even if available to civilians in certain circumstances—was still afforded to the plaintiff as "incident to his military service." *Id.*; *accord Persons*, 925 F.2d at 296; *see also Latchum*, 183 F. Supp. 2d at 1233 (finding that the cabin rental was a benefit "derived from [plaintiff's] military status" even though civilian employees could also use rent the cabins and citing *Bon*, 802 F.2d at 1095, *aff'd,* 65 F. App'x 171, 172 (9th Cir. 2003) (availability of the benefits to civilians "does not undercut" the application of the *Feres* bar). As noted above, Plaintiffs' access to military housing was incident to their military service, and therefore this factor weighs in favor of applying the *Feres* bar.

### 2.      Medical Benefits and Compensation

Plaintiffs' receipt of medical benefits from the United States also indicates that the third *Feres* factor weighs in favor of applying the *Feres* bar. *Jackson v. United States*, 110 F.3d 1484, 1489 (9th Cir. 1997) ("The existence and receipt of

these medical . . . benefits by [Plaintiffs] supports the application of the *Feres* doctrine in this case."). Plaintiffs allege that they received medical care both immediately after the incident and for claims of ongoing injury. *E.g.*, FAC ¶ 73 (alleging that Major Feindt had "multiple military hospital visits" for acute symptoms); ¶ 76 (alleging that Major Feindt "has been assigned to the Fort Carson and Fort Belvoir Soldier Recovery Units for continued care").

The other benefits Plaintiffs are entitled to under the Veterans' Benefit Act also weigh in favor of barring tort claims under *Feres*. *See, e.g.*, *Flowers*, 289 F. Supp. 2d at 1217-18 ("[T]he existence of 'generous statutory disability and death benefits is an independent reason why the *Feres* doctrine bars suit for service-related injuries;'" "[t]hat is, benefits under the Veterans' Benefits Act essentially preclude additional remedies under the FTCA.") (quoting *Johnson*, 481 U.S. at 690).

The Supreme Court's most recent *Feres* decision, *United States v. Johnson*, emphasized that "[t]he Court in *Feres* found it difficult to believe that Congress would have provided such a comprehensive system of benefits while at the same time contemplating recovery for service-related injuries under the FTCA. . . . Congress still has not amended the Veterans' Benefits Act or the FTCA to make any such provision for injuries incurred during the course of activity incident to service." 481 U.S. at 690. The Supreme Court in *Johnson* could find "no reason to modify what the Court has previously found to be the law: the statutory veterans' benefits

19

'provid[e] an upper limit of liability for the Government as to service-connected injuries.'" *Id.* (citations omitted).

In conclusion, the third factor also weighs in favor of applying the *Feres* bar.

### D.    Factor 4 (Nature of the Activities When Tortious Act Occurred) Weighs in Favor of the *Feres* Bar.

The fourth factor also strongly supports applying *Feres* here because Plaintiffs were engaged in the same kind of activity when allegedly injured as the decedent in *Feres* itself—occupying military housing to which they were entitled because of their military service. *See supra* at 6 (discussing *Feres*).

The *Feres* doctrine is not limited to cases where service members are performing military duties under orders, *see supra* at 16 (discussing Ninth Circuit military recreation cases) and the Ninth Circuit has "'consistently' barred claims under *Feres* 'to avoid examining acts of military personnel which were allegedly negligent with respect to other members of the armed services.'" *Ritchie*, 733 F.3d at 877 (quoting *Monaco v. United States*, 661 F.2d 129, 134 (9th Cir. 1981)).

Plaintiffs' claims present the very same concerns with disrupting military discipline that the Supreme Court has explained *Feres* was intended to prohibit. *E.g.*, *Stencel*, 431 U.S. at 671-72 (noting "the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty," especially given "[t]he peculiar and

20

special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline") (citation omitted); *accord Johnson*, 481 U.S. 691. Plaintiffs' claims all challenge the Navy's decision-making, including decisions regarding: (1) the operation and maintenance of Red Hill, FAC ¶¶ 1097, 1098(a)-(e); and (2) the placement of Red Hill near the JBPHH drinking water system and the military housing the United States owned to provide accommodations to those stationed at JBPHH, *id.* ¶¶ 1149, 1133-34; *see also Clendening*, 19 F.4th at 428 ("the military's provision of water and accommodations to its troops is clearly activity 'incident to service'"). Plaintiffs also allege that the May 2021 spill was due to the Navy operators disregarding proper orders. FAC ¶¶ 11-13. Even more generally, all of Plaintiffs' negligence allegations focus on the alleges acts or omissions of military "officers." *Id.* ¶¶ 1098 & 1112.

Plaintiffs also allege injuries while working for the military and under military orders, which further risks "damaging the military disciplinary structure." *Ritchie*, 733 F.3d at 874. For example, Plaintiffs allege that Major Feindt suffered "institutional betrayal" when her commanding officers criticized her response to the November 2021 spill, that she "was the target of unlawful retaliation" from the military due to her response, and that "the officer involved has retired without consequence, leaving Major Feindt without accountability or redress." FAC ¶¶ 76-77; *see also id.* ¶ 96 (alleging that "the military opened up a truancy case against

21

Petty Officer Wallace and his wife" in response to their daughter missing school after the November 2021 spill and that "[h]is command now treats him like a child neglecter . . . ."). Likewise, Chief Thompson-Watson alleges she "played a critical role in the Army's Veterinary Service response team, as they provided food protection and support to the military and veteran community" and, as a result, "faced the unique challenge of responding to a public health crisis in her community, and her own family." *Id.* ¶ 80.

Moreover, this Court received evidence in the *Feindt* bellwether trial that one of the highlighted *Whaley* Plaintiffs—Chief Petty Officer Brian Jessup—claims he was injured while entering the Red Hill Shaft in response to the November 2021 spill. *See Feindt*, Dkt. No. 580 at 17:17-19:5 (testifying as to the smells and symptoms Chief Petty Officer Brian Jessup experienced in his role as a Navy diver who entered the Red Hill Shaft in response to the November 2021 release, including "an overwhelming smell of JP-5, as well as some of the symptoms I've already described as, you know, facial tingling, burning of the eyes and skin"); *see also* Fed. R. Evid. 201(b) (allowing the Court to take judicial notice of "a fact that is not subject to reasonable dispute because it . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

In conclusion, the fourth factor also weighs in favor of applying *Feres*.

22

## CONCLUSION

Because the alleged facts mirror those of *Feres* itself, the Court should find that *Feres* bars Plaintiffs' claims. The outcome is also the same under the Ninth Circuit's four-factor test.

DATED: January 30, 2026,

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN D. GUYNN
Deputy Ass't Attorney General
Torts Branch

J. PATRICK GLYNN
Director
Environmental Tort Litigation

*/s/ Eric Rey*
ERIC REY, DC Bar No. 998615
Trial Attorney
U.S. Department of Justice
Civil Division, Torts Branch
Environmental Tort Litigation
1100 L Street, NW
Washington, DC 20005
(202) 305-5145
eric.a.rey@usdoj.gov

*Attorneys for the United States*