1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
------------------------------------
MARTHA JENNIFER CAMP, ADAM CAMP,      )
WILLIAM E. THOMPSON, and JUANITA      ) CIVIL NO.
THOMPSON, individually and on         ) 1:24-cv-00003 LEK-KJM
behalf of all others similarly        )
situated,                             )
                                      )
        Plaintiffs,                   )
vs.                                   )
                                      )
OHANA MILITARY COMMUNITIES, LLC;      )
HUNT MH PROPERTY MANAGEMENT, LLC      )
and DOE DEFENDANTS 1-10,              )
                                      )
        Defendants.                   )
------------------------------------
HUNT MH PROPERTY MANAGEMENT, LLC,     )
                                      )
        Third-Party Plaintiff,        )
vs.                                   )
                                      )
UNITED STATES OF AMERICA,             )
                                      )
        Third-Party Defendant.        )
------------------------------------
CLEOPHAS C. POWELL, on behalf of      ) CIVIL NO.
himself and all similarly situated,   ) 1:24-cv-00184 LEK-KJM
                                      )
        Plaintiffs,                   )
vs.                                   )
                                      )
OHANA MILITARY COMMUNITIES, LLC;      )
HUNT MH PROPERTY MANAGEMENT, LLC      )
and DOE DEFENDANTS 1-10,              )
                                      )                 Deposition of
        Defendants.                   )          Martha Jennifer Camp
------------------------------------
HUNT MH PROPERTY MANAGEMENT, LLC,     )
                                      )
        Third-Party Plaintiff,        )
vs.                                   )
                                      )
UNITED STATES OF AMERICA,             )
                                      )
        Third-Party Defendant.        )
------------------------------------
```

RALPH ROSENBERG COURT REPORTERS, INC.
808-524-2090 courtreporters@hawaii.rr.com

EXHIBIT 5

DEPOSITION OF MARTHA JENNIFER CAMP

Taken on behalf of the Defendant and Third-Party Plaintiff via online video conference, commencing at 7:58 a.m. on August 14, 2025, pursuant to Notice.

BEFORE:   SANDRA J. GRAN, CSR NO. 424
          Registered Professional Reporter

Martha Jennifer Camp                                    45

that they were giving out.  We were purchasing the water initially until that was set up, but I don't recall the exact date that that started.

Q.    Do you recall approximately how long you were purchasing your own water for?

A.    I would say about a week.

Q.    Now, once -- Halsey Terrace, is that where -- once it was set up, is that where you were receiving alternative water from?

A.    Yes.

Q.    And about how far away from your home is that?

A.    A mile.

Q.    Now, we've taken other depositions in this case, and I have been impressed by what I've heard about the military's distribution of the water.  Did you believe that they had a robust process in place to provide residents with alternative water sources?

A.    Yeah, they absolutely did.  They jumped in and helped, and I was very appreciative of it.

Q.    Were you able to get all of the alternative water that you wanted through the military during this time period, you know, after it got stood up in December until I think mid-March 2022?

A.    Yes.

Q.    Did you ever have any issues or problems with that

Martha Jennifer Camp                                           46

process?

A.    No, it was very efficient.

Q.    And did the military ever deliver water directly to you, or did you always pick it up from the Halsey Terrace area?

A.    You had to pick it up, and that was hard.  I'm five feet tall and 105 pounds, so they were huge, and that was a little bit back-breaking.

Q.    Did they help you with it, picking it up, or did you have to do it all yourself?

A.    They would fill up the jug and put it in my car for me, but I was responsible for getting it from my car to my house.

Q.    Makes sense. All right.  Could you just describe, I guess, you know, how much water you were getting, how it would be provided to you, and maybe sort of how often you were needing to go to pick it up?

A.    Sure.  I would go once or twice a week.  It was very Third World country, a definitely interesting experience.  But I would load up the kids in the car; we would drive to the facility.  They had tanker trucks set up.  We were given at first these large collapsable, I think they were five-gallon tote-looking things with a spigot on them.  They would fill them up for us.  So we had two, and we were using -- we used things -- we used different things like washing dishes and

Martha Jennifer Camp                                    105

they use their homes, if at all, during this time period?

A.    The same way I did.  Most would stay in the hotel for the most part.  Some had pets that were at home that they had to go back and take care of.  It was kind of the general consensus that if you had kids and dogs, you kind of kept your pets at home because it was a lot.  So, I mean, we all had pretty similar experiences.

Q.    Did some folks stay in the hotel full-time without returning to home on a daily basis?

A.    Yes, some did, those that didn't have pets at home.

Q.    And were you aware of some families that did not stay in hotels, that stayed in the residences during this time period?

A.    None that I knew personally.

Q.    Ms. Camp, you're aware that the Red Hill Bulk Fuel Storage Facility is owned and controlled by the United States government, correct?

MS. HORAN:  Objection:  Foundation.  You can answer, Ms. Camp, if you know.  I'm just going to object, but it's the same as if your attorney objects; you're welcome to answer the question.

THE WITNESS:  Thank you.  I -- it's my understanding that, yes, they do operate it.

MR. WHATTOFF:

Q.    And is it your understanding as well that the United

Martha Jennifer Camp                                              106

States government operates the Joint Base Pearl Harbor-Hickam Water Distribution System?

MS. HORAN:  Objection:  Foundation.

THE WITNESS:  I don't know the extent of how all of it works.  I'm just a normal person.

MR. WHATTOFF:

Q.  Do you have any reason to believe that Ohana or Hunt had any control or management, or role with respect to the Joint Base Pearl Harbor-Hickam Water Distribution System?

MS. HORAN:  Objection:  Form, foundation.

THE WITNESS:  I know that's how our water was supplied to us, and I know that they had the capability to shut it off to our homes and didn't.

MR. WHATTOFF:

Q.  You mean that like water -- there's a water stop outside of your homes that allows water to be shut off to your home?

A.  I'm not sure how it works.  I just know that at least in my experience, the person you pay for water or the person who controls the water can shut it off.  Generally, that's military housing, and in this case, that was the case, since utilities were included in rent.

Q.  Okay.  Other than the ability to shut water off to your home, are you aware of any other control that Hunt or Ohana had with respect to the water that came to the homes?

Martha Jennifer Camp                                    109

A.    I feel like they could have communicated better.  I feel like they could have turned off the water, which would have mitigated any further damage.  You know, as soon as they knew that the water was contaminated, they could have turned it off.  They kept it flowing.  And, you know, I don't -- I don't -- I feel like it would have helped.  I feel like they could have let us know as soon as they knew, but I feel like communication was very spotty.  There were no -- there were emails sent to my husband's personal email address, which he couldn't get while he was deployed.  Putting notes on doors, things like that, could have helped.  And then I also feel that as our landlord, they are liable for holding us -- or for providing us safe housing that we can reside in.  And when safe housing isn't available, I don't think we should have to pay rent.

Q.    All right.  Let's break that down a little bit.  With respect to communications, what specifically do you contend that Ohana or Hunt knew but failed to communicate to you?

A.    We didn't get notification of the water contamination I don't think at all from Hunt; it all came from the Navy, you know, as far as my husband was receiving communication.  On Facebook -- I found out everything through Facebook.  I should have found out through my housing first.  I should have gotten a note on the door that said, Hey, the

Martha Jennifer Camp                    110

water is contaminated, don't use it.  I should have gotten something that warned us, but we didn't get anything like that.

Q.   Okay.  But you don't dispute that you had that information, correct, that you were obtaining it from other courses?

A.   Yeah, from Facebook, which that should not be the first place I find things out.

Q.   Okay.  And do you -- you don't contend that Ohana or Hunt had some information that you did not -- that you didn't get, do you?

MS. RODRIGUEZ:  Objection:  Misstates testimony. You may answer, Jennifer.

THE WITNESS:  I'm sorry.  Can you repeat the question?

MR. WHATTOFF:

Q.   I can.  I'll ask it a little bit differently, too. I know that you've stated that you believe that Hunt should have provided you information in different formats, and I appreciate that position, but I'm just trying to clarify whether you contend that there's some information that Hunt or Ohana knew that you didn't learn about from some alternative service, be it Facebook or the government or the Department of Health or some other entity.

A.   I think the point is I should have heard it from my

Martha Jennifer Camp                                    111

landlord first.

Q.   And I appreciate that.  And I apologize, you can -- Ms. Camp, when I ask you these questions, I will let you give whatever explanation you want to provide, but I also need to get the yes or no component of it, too.  So if you tell me -- you can tell me, for instance, that, no, I didn't have such information, but I think -- and provide that explanation.  So I apologize for repeating this, but I just need to make clear that there is -- you believe that you should have received information from Ohana and Hunt, but you're not aware of any information that Ohana and Hunt had that you didn't receive from some alternative source, correct?

A.   Correct.

Q.   You also mentioned turning off the water.  You contend that Ohana or Hunt should have shut off all of the water to, I guess, Radford Terrace?

A.   I think they should have, yes.

Q.   When do you think that they should have done that?

A.   As soon as they knew that something --

MS. RODRIGUEZ:  Objection.

THE WITNESS:  -- was wrong.

MS. RODRIGUEZ:  Objection:  Calls for expert opinion.  You can answer, Jennifer.

THE WITNESS:  In my opinion, I do feel that as soon as they knew something was wrong, they should have shut it

C E R T I F I C A T E

STATE OF HAWAII                    )
                                   )    SS.
COUNTY OF MAUI                     )

I, SANDRA J. GRAN, do hereby certify:

That on August 14, 2025, at 7:58 a.m., appeared before me MARTHA JENNIFER CAMP, the witness whose deposition is contained herein; that prior to being examined, she was by me duly sworn or affirmed pursuant to Act 110 of the 2010 Session of the Hawaii State Legislature.

That the deposition was taken down by me in machine shorthand and was thereafter reduced to typewritten form under my supervision; that the foregoing represents, to the best of my ability, a true and correct transcript of the proceedings had in the foregoing matter.

That pursuant to Rule 30(e) of the Hawaii Rules of Civil Procedure, a request for an opportunity to review and make changes to the transcript:

    __X__ Was made by the deponent or a party (and/or their attorney) prior to the completion of the deposition.

    _____ Was **not** made by the deponent or a party (and/or their attorney) prior to the completion of the deposition.

    _____ Was waived.

I further certify that I am not an attorney for any of the parties hereto, nor in any way concerned with the cause.

DATED this 24th day of August, 2025, in Maui, Hawaii.

_____
SANDRA J. GRAN, RPR, HI CSR 424