REVERE & ASSOCIATES, LLLC
TERRANCE M. REVERE          5857
Pali Palms Plaza
970 North Kalaheo Ave., #A301
Kailua, HI  96734
Telephone No:  808-791-9550
terry@revereandassociates.com

MICHAEL JAY GREEN & ASSOCIATES, INC.
MICHAEL JAY GREEN          4451
841 Bishop St., #2201
Honolulu, HI 96813
Telephone No.:  808-521-3336
michael@michaeljaygreen.com

LAW OFFICE OF KYLE SMITH
P. KYLE SMITH              9533
604 Ilimano St.
Kailua, HI  96734
Telephone No.:  808-799-5175
kyle@smithlawhawaii.com

MILLER SHEA LLC
PATRICK SHEA, ESQ.         8387
American Savings Bank Tower
1001 Bishop St. Ste. 2925
Honolulu, HI 96813
patrick@millershealaw.com

PULICE NERVELL
CARLOS PEREZ-MESA, ESQ.    5448
700 Bishop Street, Suite 2100
Honolulu, Hawaii 96813
cperez-mesa@paclawteam.com
cerico@paclawteam.com
*Attorneys for Tenants*

**Electronically Filed**
**FIRST CIRCUIT**
**1CSP-25-0000454**
**07-NOV-2025**
**02:27 PM**
**Dkt. 6 MOT**

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT
STATE OF HAWAII

| | |
|---|---|
| SHAWN HUNKINS, ANDREA HUNKINS, and LINDSEY LADNIER, on behalf of Themselves and All Others Similarly Situated <br><br> Petitioners, <br><br> v. | CIVIL NO. 1CSP-25-0000454 (Other Non-Vehicle Tort) <br><br><br> PETITIONERS SHAWN HUNKINS, ANDREA HUNKINS, and LINDSEY LADNIER'S MOTION FOR PRELIMINARY |

EXHIBIT 7

|  |  |
|---|---|
| ISLAND PALM COMMUNITIES LLC; HICKAM COMMUNITIES LLC; Defendants 1-10,<br><br>Respondents. | APPROVAL OF CLASS ACTION SETTLEMENT; DECLARATION OF COUNSEL; EXHIBITS 1-6; NOTICE OF HEARING & CERTIFICATE OF SERVICE<br><br>HEARING<br>Date:<br>Time: ____ a.m. HST<br>Judge:<br><br>Arbitration<br>Dates: June 16-26, 2025<br>Arbitrator: Jerry Hiatt |

**PETITIONERS SHAWN HUNKINS, ANDREA HUNKINS, and LINDSEY LADNIER'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Petitioners Shawn Hunkins, Andrea Hunkins, and Lindsey Ladnier, on behalf of themselves and all similarly situated, (collectively, "Tenants") respectfully move for: a) preliminary approval of the class action settlement ("Settlement") arising out of arbitration with Respondents Hickam Communities LLC, and Island Palm Communities LLC (collectively "Landlords") before Dispute Prevention & Resolution, Inc. ("DPR") Arbitrator Jerry Hiatt, Esq.; b) conditional certification of the Settlement Class to effectuate the Settlement; c) approval of the proposed notice plan and attached Notice of Settlement; and d) setting of a hearing date for final approval of the Settlement. This motion is brought under HAW. R. CIV. P. 23(e) and based upon the attached memorandum of points and authorities, the accompanying declarations and exhibits, all other papers on file in this action, and other evidence or arguments the Court may receive in deciding this motion.

DATED:  Honolulu, Hawaii, this 7th day of November 2025.

P. KYLE SMITH
TERRANCE M. REVERE
PATRICK K. SHEA
MICHAEL J. GREEN
CARLOS PERES MESA

ii

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................... 1

II.   BACKGROUND & PROCEDURAL HISTORY .................................................. 2

III.  SUMMARY OF MATERIAL SETTLEMENT TERMS ......................................... 4

IV.   LEGAL STANDARD ............................................................................................ 5

V.    ARGUMENT ......................................................................................................... 5

   A.   The Settlement is Fair, Reasonable, and Adequate ......................................... 5

        1.   The Settlement is the Result of Informed Arm's-Length Negotiations
             Conducted in Good Faith by the Parties .......................................... 6

        2.   Class Representative and Class Counsel Zealously Represented the Class ... 7

        3.   The Settlement Provides Significant Benefits in Exchange for the
             Compromise of Contentious Claims While Mitigating the Risk, Expense, and
             Delay That the Class Would Otherwise Bear ................................... 8

        4.   The Settlement Treats Class Members Equitably Relative to One Another. 9

   B.   The Class Has Already Been Certified Under The More Demanding Standard
        Applicable To Certification For Trial .............................................................. 9

   C.   Class Counsel's Fee Request is Fair, Reasonable, and Appropriate .......................... 10

        1.   Class Counsel Obtained Significant Results for the Class ........................... 11

        2.   The Skill and Work Product Required of Class Counsel Was Exceptionally
             High Because of the Novel Nature of the Case .......................... 12

        3.   Customary Fees in Similar Cases Exceed Those Requested by
             Class Counsel ................................................................................ 12

        3.   The Litigation Was Complex and Class Counsel Carried Considerable
             Financial Burden and Risk .............................................................. 13

   D.   Class Counsel's Expenses are Reasonable and Appropriate ...................................... 14

   E.   The Proposed Notice Program Provides The Best Practicable Notice ..................... 14

   F.   The Proposed Schedule ................................................................................. 15

VI.   CONCLUSION ...................................................................................................... 16

## TABLE OF AUTHORITIES

**CASES**

*Acosta v. Equifax Info. Servs. LLC,*
    243 F.R.D. 377, 386 (C.D. Cal. 2007)................................................................................6

*Amantiad v. Odum,*
    90 Haw. 152, 162, 977 P.2d 160, 170 (Haw. 1999)...........................................................5

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591, 620 (1997)...................................................................................................9

*Boeing Co. v. Van Gemert,*
    444 U.S. 472, 479-81 (1980) ...........................................................................................10

*Buccellato v. AT&T Operations, Inc.,*
    No. C10-00463- LHK, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011)...........................14

*Chun v. Bd. of Trustees of Employees' Ret. Sys. of State of Hawaii,*
    92 Haw. 432, 445, 992 P.2d 127, 140 (2000)..................................................................10

*Churchill Vill., L.L.C. v. Gen. Elec.,*
    361 F.3d 566, 575 (9th Cir. 2004) ...................................................................................14

*Class Plaintiffs v. City of Seattle.,*
    955 F.2d 1268, 1276 (9th Cir. 1992) .................................................................................5

*Ebarle v. Lifelock, Inc,*
    2016 WL 5076203, at *1 (N.D.Cal., 2016) .....................................................................12

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011, 1019 (9th Cir. 1998) ..............................................................................5, 7

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2010) ...............................................................................7, 10-11

*In re General Motors Corp. Engine Interchange Litigation,*
    594 F.2d 1106 (7th Cir. 1979) ...........................................................................................5

*In re Omnivision Techs., Inc.,*
    559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ................................................................11

*In re Online DVD-Rental Antitrust Litig.,*
    779 F.3d 934, 944 (9th Cir. 2015) ...................................................................................6, 7

*In re Washington Public Power Supply System Securities Litigation,*

19 F3d 1291 (9th Cir 1994) ................................................................................................11, 13

*Kim v. Space Pencil, Inc.,*
No. C 06-3723 CRB, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009)................................8

*Lopez v. Youngblood,*
No. CV–F–07–0474 DLB, 2011 WL 10483569 (E.D. Cal. Sept. 1, 2011);...............................11

*Molski v. Gleich,*
318 F.3d 937 (9th Cir. 2003) ..................................................................................................6

*Mullane v. Central Hanover Bank & Trust Co.,*
339 U.S. 306, 314 (1950)........................................................................................................14

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.,*
221 F.R.D. 523 (C.D. Cal. 2004)..........................................................................................6, 7

*Nobles v. MBNA Corp.,*
No. C 06-3723 CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009)...........................................8

*Pierce v. Rosetta Stone, Ltd.,*
No. C 11-01283 SBA, 2013 WL 5402120 (N.D. Cal. Sept. 26, 2013)........................................7

*Rodriguez v. W. Publ'g Corp.,*
563 F.3d 948 (9th Cir. 2009) ..................................................................................................9

*Rosales v. El Rancho Farms,*
*No.* 1:09- CV-00707-AWI, 2015 WL 4460635, (E.D. Cal. July 21, 2015) .................................7

*Staton v. Boeing Co.,*
327 F.3d 938 (9th Cir. 2003) ................................................................................................11

*Vizcaino v. Microsoft Corp.,*
290 F.3d 1043 (9th Cir. 2002) ..........................................................................................11, 12

*Wakefield v. Wells Fargo & Co.,*
No. 3:13-cv-05053 LB, 2015 WL 3430240 (N.D. Cal. May 28, 2015).......................................14

*Williams v. MGM-Pathe Commc'ns Co.,*
129 F.3d 1026, 1027 (9th Cir. 1997) ......................................................................................11

*Willner v. Manpower Inc.,*
No. 11-cv-02846-JST, 2015 WL 3863625, at *7 (N.D. Cal. June 22, 2015)..............................14

## OTHER AUTHORITIES

ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS, (5th ed., updated 2015) ..................................................................................................................5, 6

*Manual for Complex Litigation (Fourth)*, § 21.632-34 (2004) ...............................................5, 6, 12

RICHARD A. POSNER, *Economic Analysis of Law* 627 (Aspen 5th ed 1998).......................................13

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT
STATE OF HAWAII

| | |
|---|---|
| SHAWN HUNKINS, ANDREA HUNKINS, and LINDSEY LADNIER, on behalf of Themselves and All Others Similarly Situated<br><br>Petitioners,<br><br>v.<br><br>ISLAND PALM COMMUNITIES LLC; HICKAM COMMUNITIES LLC, DOE Defendants 1-10,<br><br>Respondents. | CIVIL NO. 1CSP-25-0000454<br>(Other Non-Vehicle Tort)<br><br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION<br><br><br><u>HEARING</u><br>Date:<br>Time:<br>Judge: |

**MEMORANDUM IN SUPPORT OF MOTION FOR
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## I.    INTRODUCTION

This special proceeding concerns a proposed settlement ("Settlement") arising out of a lengthy and fiercely fought class action arbitration brought by Petitioners Shawn Hunkins, Andrea Hunkins, and Lindsey Ladnier on behalf of tenants (collectively, "Tenants") who resided in, or were authorized to reside in, communities managed by Respondents Hickam Communities LLC, and Island Palm Communities LLC (collectively, "Landlords") subject to the Hawaii Department of Health's Water Advisory during the "Red Hill" water contamination crisis.[1]

This litigation encompassed a four-year period of complex litigation that included submission to the First Circuit Court for the State of Hawaii, removal to the United States District Court for the District of Hawaii, submission to Dispute, Prevention and Resolution, Inc. ("DPR") for individual mediations, submission to DPR for class arbitration that included protracted depositions and

---

[1] October 17, 2025, Settlement Agreement, attached hereto as **Exhibit 1.**

document review, interlocutory challenge to the federal district court,[2] and subsequent appeal and cross-appeal to the U.S. Court of Appeals for the Ninth Circuit.[3]

Importantly, this Settlement was only reached *after* a ten-day arbitration before DPR Arbitrator Jerry Hiatt, Esq.[4] wherein the arbitration award was embargoed and appeals stayed while the parties participated in mediation with DPR Mediator Keith Hunter. With Mediator Hunter's assistance, the parties were able to reach the proposed Settlement to resolve their ongoing disputes. Accordingly, Petitioners Shawn Hunkins, Andrea Hunkins, and Lindsey Ladnier, on behalf of themselves and all similarly situated, respectfully request preliminary approval of the proposed Settlement so that notice may be provided to the class of tenants contemplated by the Settlement.

## II.    BACKGROUND AND PROCEDURAL HISTORY

This special proceeding arises from an underlying landlord-tenant dispute between tenants of several residential communities managed by Hickam Communities LLC, and Island Palm Communities LLC, during the "Red Hill" drinking water crisis on the island of Oahu, Hawaii, in November 2021. Intensively litigated from inception, the proposed Settlement seeks to resolve the arduous effort brought on behalf of more than four thousand households against sophisticated defendants and defense counsel.

Initially filed in December 2021 before the First Circuit Court of Hawaii,[5] this matter was soon removed to federal district court before the Hon. Leslie Kobayashi.[6] After removal, the parties agreed to submit the case to DPR arbitration[7] and thereafter selected DPR Arbitrator Jerry Hiatt, Esq. to oversee the arbitration wherein the parties engaged in lengthy discovery and numerous hard-fought disputes over a variety of novel legal issues for several years.

---

[2] *See Island Palm Communities, LLC, and Hickam Communities, LLC, et al. v. Kenny Amuro and Joshua Brantley,* Case No. 1:24-cv-00458.

[3] *See Island Palm Communities, LLC, and Hickam Communities, LLC, et al. v. Kenny Amuro and Joshua Brantley,* C.A. No. 25-2153; C.A. No. 25-2513.

[4] *Kenny Amuro, et al. v. Island Palm Communities, LLC, et al.*, DPR 22-0257.

[5] *Michael Casey, et al. v. Ohana Military Communities, LLC, et al.*, CIVIL NO. 1CCV-21-0001618.

[6] *Michael Casey, et al. v. Ohana Military Communities, LLC, et al.*, CIVIL NO. 22-CV-00037 LEK-WRP.

[7] *See* February 23, 2022, Plaintiffs and Defendants' Joint 26(F) Report of the Parties' Planning Meeting [ECF 16], *Casey, et al. v. Ohana Military Communities, LLC, et al.* Civil No. 1:22-CV-000037, 2 -ER-90. Because some documents are not easily accessible, citations provided herein are to the appellate record before the Ninth Circuit Court of appeals, which can be found at *Island Palm Communities, LLC, and Hickam Communities, LLC, et al. v. Kenny Amuro and Joshua Brantley,* C.A. No. 25-2153; C.A. No. 25-2513. If the Court prefers, however, any of the referenced records can be individually provided upon request.

On July 8, 2024, Tenants moved for class certification within arbitration, which was granted by the Arbitrator on September 30, 2024,[8] with arbitration claimants Shawn Hunkins, Andrea Hunkins, and Lindsey Ladnier recognized as class representatives on behalf of tenants who lived within Landlords' Red Hill-impacted communities. After certification was granted, Landlords moved to stay the arbitration pending the outcome of a challenge they intended to file in federal court.

On October 24, 2025, Landlords filed their Petition to Vacate ("Petition") Arbitration Order No. 4 and Arbitration Order No. 11 in federal court to vacate the class arbitration.[9] While the district court refused to vacate the Arbitrator's order certifying the class, it did grant Landlords' Petition against two members of the class (Kenny Amuro and Joshua Brantley).[10] The effect of this was removal of Amuro/Brantley from the class arbitration set to begin on June 16, 2025. While the district court limited the scope of its Petition Order to only Amuro/Brantley, it *sua sponte* invited Landlords to name additional claimants to be carved from the Class.[11] Landlords moved the district court to enjoin the ongoing class arbitration on an emergency basis.[12] The district court denied Landlords' motion, and instead ruled that class arbitration could proceed.[13] Amuro and Brantley subsequently appealed the district court's Petition Order,[14] with Landlords filing a cross-appeal challenging the district court's refusal to vacate the prior class certification within arbitration.

On June 16, 2025, with appeals pending, the parties began a ten-day arbitration with close of evidence on June 26, 2026. Following arbitration, the appeals were stayed and the Arbitrator's award held in confidence by agreement of the parties so the parties may mediate with DPR Mediator Keith

---

[8] September 30, 2024, Arbitration Order No. 11, ¶1, 1-ER-56-61.

[9] Petition To Vacate Arbitration Award or Compel Individual Arbitration (9 U.S.C. § 10, 9 U.S.C. §4, 5-ER-967.

[10] March 25, 2025, Order Granting in Part And Denying In Part Petitioners' Motion To Vacate Arbitrator's Class Certification Order Or, In The Alternative, To Compel Individual Arbitration; and Denying Respondents' Motion To Dismiss [ECF 30]("Petition Order") 1-ER-2-49; *id.* at 46 ("The Arbitrator exceeded his powers by determining the delegated class arbitrability issue based upon agreements and other circumstances beyond the parties' agreements to arbitrate."), 1-ER-2-47.

[11] *Id.* at 48, 1-ER-49.

[12] Petitioner's Emergency Motion to Enjoin Class Arbitration Pending Appeal and Cross-Appeal, 5-ER-684-780.

[13] Order Denying Petitioners' Emergency Motion To Enjoin Class Arbitration Pending Appeal And Cross-Appeal, 5-ER-682.

[14] March 28, 2024, Notice of Appeal.

Hunter. During this mediation and the days following it, the parties were able to reach the settlement proposed herein to resolve their ongoing disputes and related appeals.

## III.    SUMMARY OF MATERIAL SETTLEMENT TERMS

The proposed Settlement will create a fund of $27.5 million dollars to provide monetary compensation to all Class households[15] including payment of all attorney's fees, arbitration and litigation costs, and claim administration costs incurred in this matter. The Class contemplated by the Settlement includes tenants who resided in, or were authorized to reside in, communities managed by Landlords subject to the Hawaii Department of Health's Water Advisory during the "Red Hill" water contamination crisis. The Settlement defines the "Class" to include:

> **All persons who resided in, or were authorized to reside in, Hickam Communities housing from November 29, 2021, to March 18, 2022, Aliamanu Military Reservation housing from November 29, 2021, to March 11, 2022, or in Red Hill housing from November 29, 2021, to February 14, 2022.**

The Settlement Fund created under the Settlement will be distributed as follows:

- Payment to Class households of estimated 40% of total rents charged during Contamination Period;[16]

- Payment of Attorney's Fees for Class Counsel in the amount of one-third (33.33%) of the Settlement Fund in the total amount of $9,166,666.67.

- Payment of General Excise Tax ("GET") taxes of 4.167% in the total amount of $431,933.33.

- Service or incentive award to Arbitration/Settlement Class Representatives in the total amount of $135,000, which will be distributed as follows: $25,000.00 per Class Representatives and $5,000 per Class Arbitration Claimants who defended the class during arbitration proceedings.[17]

- Payment of Costs and Expenses incurred by the Class related litigation and arbitration proceedings in the amount of $225,608.28.

- Administration Fee in the amount of $103,091.00 for notice to the Class and administration of Settlement Fund.

---

[15] The Class includes ~1,619 households within Red Hill and Aliamanu neighborhoods and ~2,393 households within the Hickam neighborhood. Total households eligible to participate in the Settlement number ~4012.

[16] Total Rents paid by the Class during the relevant time period are $42,254,207.06. The Settlement Fund ($27.5M) therefore recovers 65.08% of total rents. After fees and costs are assessed, the remaining ~$17.4M will provide for a distribution of an estimated 40% of total rents to Class households.

[17] The Class Representatives are Shawn Hunkins, Andrea Hunkins, and Lindsey Ladnier. The Class Arbitration Claimants are Nicole Sciara, Ellen Sciara, Amanda Torres, Adam Torres, Lonnie Lake, Luella Lake, Katie Roberts, Yvonne Shaw, Wayne Dingle, Jessica Dingle, Jennifer Lunardini, and Stacy Scott.

IV.    **LEGAL STANDARD**

As a matter of "express public policy," courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.[18] Hawaii Rule of Civil Procedure 23(e) mandates that a class action may not be settled without the approval by the Court. While Hawaii Rule of Civil Procedure 23(e) provides little guidance, federal case law interpreting Federal Rule of Civil Procedure 23(e) recognizes a multistep process for approval discussed below.[19] Class settlement approval is accomplished in two steps: (1) *preliminary* review by the trial court for basic fairness and adequacy; and (2) *final* review after notice has been distributed to class members and objections or further argument may be heard.[20] Because final review provides a complete opportunity to review the settlement (with the benefit of the reaction of the Class), the burden on the parties seeking preliminary approval is relatively light and approval is appropriate so long as the proposed settlement is "within the range of possible approval."[21] At this first stage of the Court's evaluation of the Settlement, Class Counsel requests that (a) the Settlement be preliminarily deemed fair, reasonable, and adequate; (b) a Final Fairness hearing set;  and (c) notice of the Settlement (i.e. "Class Notice") be distributed to the Class.

V.    **ARGUMENT**

A.    **The Settlement is Fair, Reasonable, and Adequate.**

With this petition and motion, Class Counsel and the Class Representatives respectfully request the Court to take the first step in the settlement approval process by granting preliminary approval of the Settlement Agreement so that notice may be given to the Class for review of the

---

[18] *Amantiad v. Odum*, 90 Haw. 152, 162, 977 P.2d 160, 170 (Haw. 1999) (citations and quotation marks omitted) ("It is an elemental rule that the law favors compromise and settlement of disputes and generally, in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it."); *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)(noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *see also* William B. Rubenstein, Newberg on Class Actions ("Newberg") § 13.1 (5th ed. updated 2015) (citing cases).

[19] HAW. R. CIV. P. 23(e) ("(e)  Dismissal or compromise. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."); *see Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998).

[20] *See* Manual for Complex Litigation (Fourth), § 21.632-34 (2004).

[21] *In re General Motors Corp. Engine Interchange Litigation,* 594 F.2d 1106, 1124 (7th Cir. 1979) (quoting and following the Manual for Complex Litigation).

5

Settlement. At the preliminary approval stage, courts do not make a final determination of fairness, reasonableness, or adequacy. Instead, the key question is whether the settlement is "potentially fair, as the Court will make a final determination of [the settlement's] adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out."[22] The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement "is within the range of possible approval" and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile.[23] "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."[24] The inquiry focuses upon whether the proposed settlement falls within the "range of possible approval" and appears to be sufficiently fair, reasonable, and adequate to warrant distributing notice to class members informing them about the proposed settlement and their options for responding and participating.[25] Here, the proposed Settlement provides a fair, reasonable, and adequate resolution of this litigation given the risks of further litigation and delay. Indeed, all relevant factors weigh in favor of preliminary approval as the Settlement was reached in a procedurally fair manner with Class Counsel taking on both arbitration and appeals on behalf of the Class to secure the best available result with settlement only occurring with the assistance of Mediator Keith Hunter.

1) **The Settlement is the Result of Informed Arm's-Length Negotiations Conducted in Good Faith by the Parties.**

"To assess a settlement proposal, courts must balance the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the state of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement."[26] The Court's role is to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between,

---

[22] *Acosta v. Equifax Info. Servs. LLC,* 243 F.R.D. 377, 386 (C.D. Cal. 2007).

[23] Newberg at § 13.13.

[24] *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.,* 221 F.R.D. 523, 526 (C.D. Cal. 2004).

[25] *Molski v. Gleich,* 318 F.3d 937, 944 (9th Cir. 2003); *see also Manual for Complex Litigation* § 21.633 ("Once the judge is satisfied as to . . . the fairness, reasonableness and adequacy of the settlement," the court should schedule a final approval hearing and direct notice to class members).

[26] *In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 944 (9th Cir. 2015).

6

the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."[27]

In this instance, the Settlement arises out of serious, informed, and non-collusive negotiations that occurred after years of difficult litigation with the ultimate assistance of a respected mediator.[28] "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with facts of the underlying litigation."[29] Class Counsel are experienced trial attorneys who are familiar with class action litigation in general and with Hawaii class and consumer protection law in particular having tried and settled such cases in both state and federal courts of Hawaii.[30] Importantly, the Settlement was reached only *after* Class Counsel took class claims to arbitration and demonstrated their willingness to defend the Class on appeal. The fact that settlement was facilitated by a well-respected mediator additionally weighs heavily in favor of approval.[31] Here, Mediator Hunter's involvement following arbitration was an integral part of the compromise reached between the parties. Given the fact settlement was only reached after several years of litigation, discovery, appeals, arbitration, and negotiated with the assistance of a neutral mediator, there is no dispute the Settlement was reached in a procedurally fair manner weighing strongly in favor of preliminary approval.

**2)    Class Representatives and Class Counsel Zealously Represented the Class.**

The Class Representatives and Class Counsel also prosecuted this action on behalf of the Class with vigor and dedication.[32] As detailed above, Class Counsel engaged in significant motion, discovery, and trial practice to prosecute the Class claims. These efforts included opposing multiple dispositive motions, taking and defending numerous depositions, review of thousands of documents, and trying claims to the Arbitrator. In doing so, Class Counsel bore a tremendous amount of risk for a lengthy

---

[27] *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998) (internal quotes and citations omitted); *see also In re Online DVD,* 779 F.3d at 944 (noting settlements in class actions "present unique due process concerns for absent class members," including the risk that class counsel "may collude with the defendants") (quoting *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 946 (9th Cir. 2010)).

[28] Indeed, multiple mediations occurred over a number of years with the assistance of DPR Mediator Keith Hunter before the parties were able to reach agreement.

[29] *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528 (internal quotations omitted).

[30] Smith Declaration at ¶¶4-5.

[31] *Rosales v. El Rancho Farms, No.* 1:09- CV-00707-AWI, 2015 WL 4460635, at *16 (E.D. Cal. July 21, 2015), report and recommendation adopted, 2015 WL 13659310 (E.D. Cal. Oct. 2, 2015) ("[T]he 'presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness.'") (citation omitted)); *Pierce v. Rosetta Stone, Ltd.,* No. C 11-01283 SBA, 2013 WL 5402120, at *5 (N.D. Cal. Sept. 26, 2013) (same).

[32] *See, e.g.* HAW. R. CIV. P. 23(e)(2)(A).

7

period of time for the benefit of their clients. Through all these efforts, Class Representatives diligently participated in all settlement and mediation efforts in addition to testifying at arbitration, producing and reviewing substantial discovery, sitting for depositions, regularly communicating with Class Counsel, and meaningfully assisting throughout the case. Class Counsel and Class Representatives have therefore carried out their obligations to the Class and recommend preliminary approval of the Settlement.

> **3)    The Settlement Provides Significant Benefits in Exchange for the Compromise of Contentious Claims While Mitigating the Risk, Expense, and Delay That the Class Would Otherwise Bear.**

The Settlement provides substantial relief to the Class. This is particularly true considering: a) the costs, risks, and delay of further appeal to the Ninth Circuit; b) the certainty afforded by the Settlement; and c) the fair terms of the negotiated monetary amount. In addition to monetary payment to all Class households of the estimated 40% of their rents paid, the Settlement covers *all* attorney's fees and costs associated with litigation incurred on behalf of the Class. The way the Settlement will be allocated is also fair and efficient. Settlement Class Members need not do anything to receive a portion of the Settlement Fund. Rather, every Class household will be entitled to the monetary and non-monetary benefits of the Settlement. For these reasons, Class Counsel support this Settlement, particularly given the delay and uncertainty the Class could achieve a better outcome through further appeal. Compromise of the substantial risks in exchange for a certain and timely provision of the benefits under the Settlement is an unquestionably reasonable outcome.[33]

This is particularly true due to the inherent risks of the case. Landlords chose to fight, not concede, and the Class was opposed by experienced and talented defense counsel from multiple firms throughout litigation, arbitration, and on appeal. Landlords disputed Class liability and damage theories at every turn asserting that damages were not calculable on a class-wide basis. There is also no guarantee the Class would survive further appeal or prevail at arbitration. Avoiding the risk and delay of appeal (and potential re-trials and re-appeals) in exchange for immediate economic certainty justifies approval. Accordingly, given the risks, the favorable Settlement obtained on behalf of the Class is fair and reasonable and should receive preliminary approval.

---

[33] *Nobles v. MBNA Corp.,* No. C 06-3723 CRB, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) ("The risks and certainty of recovery in continued litigation are factors for the Court to balance in determining whether the Settlement is fair.") (citing *Kim v. Space Pencil, Inc.,* No. C 11-03796 LB, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012) ("The substantial and immediate relief provided to the Class under the Settlement weighs heavily in favor of its approval compared to the inherent risk of continued litigation, trial, and appeal, as well as the financial wherewithal of the defendant.").

8

### 4)    The Settlement Treats Class Members Equitably Relative to One Another.

The proposed Settlement benefits the entire Class without any unwarranted preferential treatment of segments of any portion of the Class over the another. All Class households will receive the same percentage of compensation and the security and benefits provided by the Settlement's terms. Class Counsel also request an incentive award for Class Representatives and the persons who defended the Class at arbitration to be paid from the Settlement Fund. Service awards are frequently awarded in class action cases and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."[34] A service award is appropriate here and does not constitute preferential treatment. Class Representatives were never promised and did not condition their assistance on the expectation of a service award.[35] Nevertheless, Class Representatives spent tremendous amounts of time developing the case, conferring with counsel, answering discovery requests, participating in settlement and mediation efforts, searching for and producing documents, preparing and testifying at their depositions, preparing and testifying at arbitration, and staying engaged through the multi-year appellate process. Given these significant commitments and contributions, a service award is appropriate, and Class Counsel propose that $25,000 be given to each of the Class Representatives and $5,000 be given to persons selected to defend the Class at arbitration.

### B.    The Class Was Previously Certified Under The More Demanding Standard Applicable for Trial Certification.

The Class proposed for settlement has also already proved its soundness by having previously weathered prior motions practice in arbitration. In arbitration, a substantially identical class was certified by the Arbitrator for all residents who lived within the impacted communities during the relevant time period. Indeed, in arbitration class members were previously provided notice and an opportunity to opt-out of the process to ensure that class treatment was appropriate. Certification for litigation requires the same analysis as certification for settlement, *except* that certification for litigation generally requires considerations of manageability for trial that need not be addressed when a class is certified solely for settlement.[36] Thus, the class certified in arbitration survived review applying a more

---

[34] *Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 958-59 (9th Cir. 2009).

[35] Smith Declaration at ¶10-12; Revere Declaration at ¶7-8.

[36] *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

9

stringent standard. Although the Supreme Court has noted that the elements of Rule 23 are designed to prevent "unwarranted or overbroad class definitions [and]… demand undiluted, even heightened, attention in the settlement context," that was because "a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."[37] Here, the Arbitrator possessed that opportunity [38] in addition to challenges brought in arbitration as well as the federal district court. Given the scope of arbitration and identification of Class households therein, there is no need or basis to "adjust" the Class in any way for the purpose of settlement. Stated differently, this case is not an illusory settlement reached without real risk or real litigation. Rather, the Settlement provides substantial benefit to the Class that was only obtained after years of hard-fought litigation and risk at both trial and appellate levels where the facts and evidence supporting the Settlement were tested.

**C.    Class Counsel's Fee Request is Fair, Reasonable, and Appropriate and Less that the Amount Negotiated as a Material Term of the Settlement.**

Class Counsel's fee request of fees is also fair, reasonable and appropriate. During mediation Class Counsel negotiated for allocation of up to one-third attorney's fee subject to Court review. This amount also reflects the amount negotiated originally for fees through arbitration or trial, which occurred in addition to  interlocutory and appellate challenge. In deciding whether a requested fee is appropriate, the Court's role is to determine whether such amount is "fundamentally 'fair, adequate, and reasonable.'"[39] Generally, two different methods are sometimes used to calculate a reasonable attorneys' fee depending on the circumstances.[40] First, the "lodestar method" is commonly used where the relief sought and obtained is *not* easily monetized. Second, the "percentage-of-recovery method" is favored where a common-fund settlement exists and the benefit to the class is easily quantified.[41] Where a settlement establishes a common fund or calculable monetary benefit for the class members, it is appropriate and preferred to award attorneys' fees based on a percentage of the monetary benefit

---

[37] *Id.*

[38] For example, the relevant time period was initially November 29, 2021, to March 2022, but was subsequently narrowed at arbitration following confirmation of exact dates for issuance of the State of Hawaii Department of Health Advisory for the Hickam, Aliamnanu, and Red Hill neighborhoods.

[39] *Staton v. Boeing Co.,* 327 F.3d 938, 963 (9th Cir. 2003) (quoting FED. R. CIV. P. 23(e)).

[40] *Chun v. Bd. of Trustees of Employees' Ret. Sys. of State of Hawaii,* 92 Haw. 432, 445, 992 P.2d 127, 140 (2000) ("[I]n common fund cases, the decision whether to employ the percentage method or the lodestar method be reposed within the discretion of the trial court.")

[41] *In re Bluetooth,* 654 F.3d at 941-42.

obtained as this reflects the risks and contingent nature of the class action.[42] Courts look to the entire value of the benefit made available to class members, even in cases where it is unlikely all or most of that benefit would be claimed.[43] Common fund benefits therefore include all amounts paid by the defendant including, for example, the cost of notice, settlement administration, and attorneys' fees.[44] Here, 100% of the Settlement will be shared by the Class in addition to the non-monetary benefits of the Settlement. Fees of up to 40% percent are typically awarded in common fund cases.[45] Thus, Class Counsel's request for one-third (33.33%) of the Settlement Fund is well within the range of fees awarded for class settlements. Federal courts in the Ninth Circuit frequently reference five factors in evaluating the reasonableness of a requested fee. While these factors are non-binding on this court, they are useful to evaluate the reasonableness of the fee requested by Class Counsel. These factors are: (1) the result achieved; (2) the skill required and the quality of the work of plaintiffs' counsel; (3) the customary fees for similar cases; (4) the contingent nature of the fee and financial burden carried by counsel; and (5) the risks inherent in the litigation.[46]

### 1) Class Counsel Obtained Significant Results for the Class.

The benefit obtained for the Class is the single most important factor.[47] Here, the settlement fund negotiated by Class Counsel will return an estimated 40% of rents to Class households for the relevant period *after* fees and costs are paid. Given the incredible uncertainties of this litigation, this recovery provides a substantial benefit to the Class. In addition to the significant monetary benefit, the Settlement pays all attorney's fees and the costs associated with arbitration and appeal that make such cases so difficult and risky to effectively litigate.[48] Viewing these factors together, it is clear that

---

[42] *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002).

[43] *Lopez v. Youngblood,* No. CV–F–07–0474 DLB, 2011 WL 10483569, at *12 (E.D. Cal. Sept. 1, 2011); accord *Boeing Co. v. Van Gemert,* 444 U.S. 472, 479-81 (1980); *Williams v. MGM-Pathe Commc'ns Co.,* 129 F.3d 1026, 1027 (9th Cir. 1997).

[44] *Staton*, 327 F.3d at 974-75; *Lopez,* 2011 WL 10483569, at *31; *Hartless v. Clorox Co.,* 273 F.R.D. 630, 645 (S.D. Cal. 2011).

[45] *In re Washington Public Power Supply System Securities Litigation,* 19 F3d 1291, 1297 (9th Cir. 1994) (noting that the district court "acknowledged Class Counsel's central proposition that a fee in the range of 20-40 percent is typical in many common fund cases").

[46] *Vizcaino,* 290 F.3d at 1048-50;

[47] I*n re Bluetooth,* 654 F.3d at 942; *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).

[48] *See Vizcaino,* 290 F.3d at 1049 ("Incidental or nonmonetary benefits conferred by the litigation are a relevant circumstance" in determining fee awards).

the strength of the settlement benefit – the most important factor in the reasonableness evaluation – supports Class Counsel's requested fees.

**2)  The Skill and Work Product Required of Class Counsel Was Exceptionally High Given the Novel Nature of the Case.**

This case was not typical and presented numerous novel legal questions ranging from the application of consumer protection law under HRS § 480, unjust enrichment; money damages; and the interaction of legal and equitable findings under Hawaii law. The class also arises out of a unique arbitration context that was hotly contested in arbitration, federal district court, and on appeal. Many of the legal issues and questions raised therein have never been addressed under Hawaii law. While Class Counsel are experienced trial attorneys, this case required Class Counsel from multiple law firms to successfully defend against multiple dispositive challenges and prepare for and try claims rarely taken to trial in Hawaii. To accomplish this, Class Counsel performed substantial factual investigation and legal research, deposed key executives, experts and other witnesses, reviewed and analyzed tens of thousands of documents, participated in mediation efforts, and effectively advocated for the Class though proceedings in different court and arbitration. The novel nature of the claims brought by the Class required Class Counsel to successfully defend the Class not only to get to arbitration, but thereafter on interlocutory and appellate challenges. At any point, Class claims could have been dissolved, which emphasizes the risk borne by Class Counsel to commit to this litigation. Unlike many class actions, Class Counsel were willing and able to try Class claims in arbitration, which involved a significant commitment of effort, skill, and resources that many firms are simply not capable of. Accordingly, this factor supports Class Counsel's request for fees.

**3)  Customary Fees in Other Cases Exceed Those Sought by Class Counsel.**

As noted, a common benchmark for attorney's fees in common-fund federal settlements is between 25% and 40% of the settlement fund.[49] This range, however, generally applies to common fund settlements that settle *before* trial and provide limited benefits to the Class. For this reason, courts advise that a fee request "be supported by findings that take into account all of the circumstances of the case."[50] Here, Class Counsel advanced Class claims through a two-week arbitration, multiple courts, an interlocutory challenge to federal district court, and filing of appeals before the Ninth Circuit

---

[49] *See also* Federal Judicial Center, *Manual for Complex Litigation* § 24.121 at 189 (cited in note 20) (citing range of 25 to 30 percent and collecting examples).

[50] *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002); *see also Ebarle v. Lifelock, Inc,* 2016 WL 5076203, at *1 (N.D.Cal., 2016).

12

thereby accepting substantial costs and risk above and beyond most cases to obtain the best result possible under the circumstances.[51] Class Counsel turned down multiple offers before reaching the final settlement at $27.5M at mediation *after* proving their case at arbitration. Importantly, the contingent nature of this litigation has always been disclosed to the Class. It is an established practice to reward attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might have been paid nothing at all.[52] Such a practice encourages the legal profession to assume such risks and promotes competent representation for plaintiffs who could not otherwise hire an attorney.[53] Thus, Class Counsel's request for one-third of the settlement fund is within the normal range, fair to the Class, reflects the large risks shouldered by Class Counsel, and should be preliminarily approved.

**4) The Litigation Was Complex and Class Counsel Carried Considerable Financial Burden and Risk.**

There is no question this case also presented significant litigation risks for Class Counsel. Class Counsel devoted years of effort and substantial time and expense to further the Class's interest without any guarantee they would ever be reimbursed for their time and efforts. While Class Counsel believed in the case, the demands of the case were high and a successful decision at arbitration or decision on appeal was far from a foregone conclusion. Pursuing this case also meant Class Counsel were precluded from taking and devoting resources to other cases or potential cases with no guarantee that the time expended would result in any recovery or recoupment of costs. Landlords denied liability, contested class certification, and brought both interlocutory and appellate challenges *before* the arbitration hearing. Despite these risks, Class Counsel represented the Class on a contingency basis, committed to all necessary expenses, and turned down other work opportunities to work on this case to bring the claims to a successful resolution with meaningful benefit for the Class. The complexity and burden on Class Counsel therefore supports their fee request.

---

[51] *See* Richard A. Posner, *Economic Analysis of Law* 627 (Aspen 5th ed 1998) (stating that "[the lawyer for the class will be tempted to offer to settle with the defendant for a small judgment and a large legal fee, and such an offer will be attractive to the defendant, provided the sum  of the two figures is less than the defendant's net expected loss from going to trial").

[52] *See In re Washington Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299 (9th Cir. 1994).

[53] *Id.*

**D.     Class Counsel's Expenses are Reasonable and Appropriate.**

"Class counsel are entitled to reimbursement of reasonable out-of-pocket expenses."[54] Expenses that are reasonable, necessary, directly related to the litigation, and normally charged to a fee-paying client are recoverable.[55] Here, Class Counsel's expenses are $225,608.28 and were directly incurred in the litigation and of the kind normally charged to regular fee-paying clients.[56] The vast majority of these costs were associated with the costs of arbitration, discovery including twenty depositions, and costs associated with trial preparation and appeal.

**E.     The Proposed Notice Provides The Best Practicable Notice to the Class.**

Before a proposed settlement may be approved, courts generally "must direct notice in a reasonable manner to all class members who would be bound by the proposal."[57] "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard.'"[58] For a Rule 23(b)(3) Settlement class, the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[59] The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[60]

The Settlement Notice planned here is clear, complete, and meets all the requirements of Rule 23.[61] The notices are designed to explain Class Members' rights and obligations under the Settlement in clear terms and in a well-organized and reader-friendly format.[62] They include an overview of the

---

[54] *Wakefield v. Wells Fargo & Co.*, No. 3:13-cv-05053 LB, 2015 WL 3430240, at *6 (N.D. Cal. May 28, 2015); *see also Staton*, 327 F.3d at 974; FED. R. CIV. P. 23(h).

[55] *See, e.g., Willner v. Manpower Inc.,* No. 11-cv-02846-JST, 2015 WL 3863625, at *7 (N.D. Cal. June 22, 2015); *Buccellato v. AT&T Operations, Inc.,* No. C10-00463- LHK, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011).

[56] Revere Declaration at ¶9.

[57] *See e.g.* HAW. R. CIV. P. 23(e); FED. R. CIV. P. 23(e)(1).

[58] *Churchill Vill., L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004).

[59] HAW. R. CIV. P. 23(c)(2)(B).

[60] *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

[61] *See* Declaration of Notice Administrator, attached hereto as **Exhibit 2.**

[62] [Proposed] Notice of Preliminary Approval of Settlement, attached hereto as **Exhibit 3;** [Proposed] Postcard Notice of Preliminary Approval of Settlement, attached hereto as **Exhibit 4;** [Proposed] Publication Notice of Preliminary Approval of Settlement, attached hereto as **Exhibit 5.**

litigation; an explanation of the Settlement benefits; contact information for Class Counsel; and detailed instructions on how to participate in or object to the Settlement. The principal method of reaching Class Members will be by individual direct mail by U.S. first class mail to all Class Members. As original addresses during the Contamination Period have been provided by Landlords, the Notice Administrator will research and send direct mail to current addresses for all identifiable class members. Additionally, the notice program includes a settlement website where Class members may review the settlement and provide contact information as well as publication notice. This Notice plan, grounded in individual notice, comports with accepted standards of settlement notice and should be approved.

### F.    The Proposed Schedule

The last step in the settlement process is to hold a final fairness hearing at which the Court may hear all evidence and arguments necessary to make a final settlement evaluation. Proponents of the settlement may explain the terms and conditions of the settlement and offer arguments in support of final approval. In addition, Class Members or their counsel may be heard in support of or in opposition to the Settlement Agreement.  The Court will determine after the Final Approval Hearing whether the Settlement should be approved and whether to enter a final order and judgment under Haw. R. Civ. P. 23.  Class Counsel propose the following schedule of events leading to the Final Approval Hearing:

| EVENTS | DAYS FROM PRELIMINARY APPROVAL ORDER |
|---|---|
| Mail Notice of Preliminary Approval | Within 15 Days of Order Granting Preliminary Approval |
| Deadline to Submit Opt-Outs After Mailing | 30 Days of Mailing Class Notice |
| Deadline to Submit Objections After Mailing | 30 Days of Mailing Class Notice |
| File Motion for Final Approval After Mailing | 45 Days of Mailing Class Notice |
| Final Fairness Hearing | ~60 Days After Preliminary Approval |

…

15

## III.    CONCLUSION

For the above reasons, Class Counsel and the Class Representative respectfully request the Court:

(1)    Preliminarily approve the Settlement under Rule 23(e)(1);[63]

(2)    Direct notice to the Class through the proposed notice program; and

(3)    Schedule the final approval hearing under Rule 23(e)(2).


DATED: Honolulu, Hawai'i, November 7, 2025.


_____
P. KYLE SMITH
TERRANCE M. REVERE
PATRICK K. SHEA
MICHAEL J. GREEN
CARLOS PERES MESA

---

[63] *See* [Proposed] Order Granting Preliminary Approval of Settlement, attached hereto as **Exhibit 6.**

16

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT
STATE OF HAWAII

| | |
|---|---|
| SHAWN HUNKINS, ANDREA HUNKINS, and LINDSEY LADNIER, on behalf of Themselves and All Others Similarly Situated<br><br>Petitioners,<br><br>v.<br><br>ISLAND PALM COMMUNITIES LLC; HICKAM COMMUNITIES LLC; DOE Defendants 1-10,<br><br>Respondents. | CIVIL NO. 1CSP-25-0000454<br>(Other Non-Vehicle Tort) |

## **DECLARATION OF P. KYLE SMITH**

I, P. KYLE SMITH, hereby declare, under penalty of law, as follows:

1. I am a Hawaiʻi licensed attorney with the Law Office of Kyle Smith representing Petitioners in this action.

2. I make this declaration based on personal knowledge unless otherwise stated and am competent to testify as to the matters set forth herein.

3. I am a member in good standing before the courts of the State of Hawaiʻi, including the United States District Court for the District of Hawaiʻi, and the Ninth Circuit Court of Appeals.

4. I have never been suspended, disciplined, or disbarred by any court, I have never been subject to any disciplinary proceedings by any organization, and I have never had any certificate or privilege to appear or practice before any administrative body suspended or revoked.

5. I have been appointed as class counsel in numerous cases in both state and federal courts, including but not limited to:

    a. Appointment as Settlement Class Counsel *Nova Burnes, et al. v. Hawaiian Electric Company, Inc.* Case No. 2CCV-24-0000964, which involves the "Maui Fire" class action settlement of $135M to compensate class victims of the Maui wildfires of August 2023.

    b. Appointment as Settlement Class Counsel by the Honorable Steven Nichols in *LoPresti, et al. v. Haseko (Hawaii), Inc., et al*, Civil No. 13-1-1995-07, which resulted in preliminary and final approval of $40M on behalf of homeowners related to Defendants Haseko (Ewa), Inc., et al.'s refusal to build the Ewa Marina in Ewa, Oahu.

17

c. Appointment as Class Counsel with Terrance Revere, Esq., in *Kenny Amuro, et al., v. Island Palms Communities, Inc.,* et al., DPR No. 22-0257, which involves the underlying claims on behalf of more than ~4,000 households against landlords related to the Red Hill water contamination crisis.

d. Appointment as Class Counsel with Terrance Revere, Esq., in *Andra Lethgo v. CP IV Waterfront, LLC d/b/a Kapilina Beach Homes and GREP Southwest, LLC,* Civ. No. 1CCV-22-000005, which involves claims on behalf of more than 1,459 households against landlords related to the Red Hill water contamination crisis.

e. Appointment as Class Counsel by the Honorable Peter T. Cahill, in *Connie Bleil, et al. v. Stanford Carr Development, LLC,* Civil No. 2CC171000506, which involved construction defect and related claims on behalf of approximately 114 single family homes within the Cottages at Kehalani community in Wailuku, Maui.

f. Appointment as Class Counsel with Terrance Revere, Esq., by the Honorable Melvin K. Fujino in *Christopher Zyda, et al. v. Four Seasons Hotels and Resorts, et al.,* Civil no. 15—249 MHF. As the Court is aware, this case was thereafter removed to federal court under the Class Action Fairness Act (CAFA), 28 U.S.C. §1332(d) and 28 U.S.C. §1453(b), wherein this Court again recognized myself and Terrance Revere, Esq., as Class Counsel.

g. Appointment as Class Counsel with Terrance Revere, Esq., by the Honorable Gary W.B. Chang in *LoPresti, et al. v. Haseko (Hawaii), Inc., et al*, Civil No. 13-1-1995-07, which involves claims on behalf of 3000 residences related to Defendants Haseko (Ewa), Inc., et al.'s refusal to build the Ewa Marina in Ewa, Oahu.

h. Appointment as Class Counsel for the settlement class created by the Honorable Randall G.B. Valenciano in *Association of Apartment Owners of Kulana v. Travelers Casualty and Surety Company of America*, Civ. No. 12-1-0027, which resolved claims on behalf of homeowners within the Kulana subdivision project.

i. Appointment as Class Counsel by the Honorable Karen T. Nakasone in *Michael J. Dorsey, et al. v. Mid-Pacific Country Club*, Civil No. 12-1-00158, which involves claims of pesticide contamination into an adjacent residential neighborhood in Kailua, Oahu.

j. Appointment as Class Counsel by the Honorable James C. Mahan, in *Robert Greene, et al. v. Alan Waxler Group Charter Services*, LLC, at al., 2:09-cv-00748, which is a wage and hour class action under state and federal law within the United States District Court, District of Nevada on behalf of approximately 600 employees.

k. Appointment as Class Counsel *In Re Kitec Fitting Litigation*, Case No. A493302, which involved defective plumbing fittings in over 30,000 homes in Clark County, Nevada, and recovered nearly $300 million for Nevada homeowners.

6. Additionally, I have individually and collectively tried both class and mass actions in arbitration and within state and federal courts in the State of Hawaii, including:

18

   a. *Aana, et al. v. DuPont Pioneer, et al.*, Civil No. 12-00231 – LEK BMK – 5-week jury trial before the Honorable Leslie Kobayashi on behalf of initial bellwether plaintiffs on behalf of approx. 200 homeowners in Waimea, Kauai, related to claims involving dust and pesticides.

   b. *LoPresti, et al. v. Haseko (Hawaii), Inc., et al*, Civil No. 13-1-1995-07, which involves claims on behalf of 3000 residences related to Defendants Haseko (Ewa), Inc., et al.'s refusal to build the Ewa Marina in Ewa, Oahu.

   c. *Christopher Zyda, et al. v. Four Seasons Hotels and Resorts, et al.,* Civil no. 15—249 MHF, which involved consumer protection claims on behalf of homeowners and club members within the Hualalai Four Seasons community.

   d. *Kenny Amuro, et al., v. Island Palms Communities, Inc.,* et al., DPR No. 22-0257, by Arbitrator Jerry Hiatt, Esq., which involved claims on behalf of more than ~4,000 households against landlords related to the Red Hill water contamination crisis.

7. I make this declaration in support of the Motion for Class Certification and Approval of Class Settlement.

8. This case has been intensively litigated from its inception and reflects a hard-fought effort over several years by Class Counsel and Class Representative to research, develop, and assert claims and remedies on behalf of the Class against sophisticated defendants. These efforts have included: a) substantial battles over certification within arbitration; b) wide-ranging class discovery requiring the review of thousands of documents; c) extensive depositions of numerous experts and lay witnesses; d) multiple dispositive motions challenging the Class and a variety of novel legal issues under Hawaii and federal law; e) a ten-day arbitration commencing on July 16, 2025; f) interlocutory appeal to the federal district court; and g) subsequent cross appeals to the Ninth Circuit Court of Appeals.

9. The parties have participated in multiple settlement efforts, which included multiple settlement conferences with Keith Hunter of Dispute Prevention & Resolution and Ninth Circuit Mediator Paula Raffaelli before the parties agreed to the present settlement in October 2025 following arbitration.

10. Throughout litigation, Class Representatives spent a tremendous amount of time and effort to help Class Counsel understand and develop the case which involved conferring with counsel, answering discovery requests, participating in settlement and mediation efforts, searching for and producing documents, preparing and testifying at depositions, and preparing for and testifying at arbitration.

19

11. Similarly, the representatives selected to defend the Class at arbitration answered voluminous discovery requests, prepared and testified at depositions, and prepared and testified at arbitration for the Class.

12. At no point was any Class Representative promised a service award nor did they condition their representation or efforts upon the expectation of a service award. Instead, the service award proposed falls short of the contributions and commitments given by Class Representatives over the past several years.

13. The parties worked diligently to reach the proposed Settlement, and I believe the claims resolved in the proposed Settlement have merit. I recognize the expense and risk of continued proceedings necessary to prosecute and defend the claims through further appellate challenges and have considered the uncertain outcomes and risks.

14. As Class Counsel, I believe the Settlement confers significant benefits to the class and is fair, reasonable, adequate, and in the best interest of the Settlement Class given the costs and risk faced by protracted litigation.

15. It is my opinion, based on the record of the case and analyzing the likelihood of success, the Settlement is in the best interest of the Settlement Class and does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.

16. I therefore recommend both preliminary and ultimately final approval of the proposed Settlement.

I declare under penalty of law that the foregoing is true and correct.

DATED: Honolulu, Hawai'i, November 7, 2025.

_____
P. Kyle Smith

20

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT
STATE OF HAWAII

| | |
|---|---|
| SHAWN HUNKINS, ANDREA HUNKINS, and LINDSEY LADNIER, on behalf of Themselves and All Others Similarly Situated<br><br>Petitioners,<br><br>v.<br><br>ISLAND PALM COMMUNITIES LLC; HICKAM COMMUNITIES LLC; Defendants 1-10,<br><br>Respondents. | CIVIL NO. 1CSP-25-0000454<br>(Other Non-Vehicle Tort) |

**DECLARATION OF TERRANCE REVERE**

I, TERRANCE M. REVERE, hereby declare, under penalty of law, as follows:

1. I am a Hawaiʻi licensed attorney with the law firm of Revere & Associates representing Petitioners.

2. I make this declaration based on personal knowledge unless otherwise stated and am competent to testify as to the matters set forth herein.

3. I am a member in good standing before the courts of the State of Hawaiʻi, including the United States District Court for the District of Hawaiʻi.

4. I make this declaration in support of the Motion for Preliminary Approval of Class Settlement.

5. This case has been intensively litigated from inception and reflects a hard-fought effort over several years by Class Counsel and Class Representatives to research, develop, and assert claims on behalf of the Class against multiple sophisticated parties at trial and appellate levels.

6. Class Counsel conducted extensive discovery including substantive depositions and the review of thousands of documents requiring the investment of substantial time and resources by Class Counsel.

7. Throughout litigation, the Class Representatives spent a tremendous amount of time and effort to help Class Counsel understand and develop the case which involved conferring with counsel, answering discovery requests, participating in settlement and mediation efforts, searching for and producing documents, preparing and testifying at depositions, and preparing for and testifying at trial.

21

8.  At no point was any Class Representative promised a service award nor did they condition their representation or efforts upon the expectation of a service award. Instead, the service award proposed falls short of the contributions and commitments given by Class Representatives over the past several years.

9.  Class Counsel have directly incurred costs of $225,608.28 in the prosecution of this matter.

10. The parties worked diligently to reach the proposed Settlement and I believe the claims resolved in the proposed Settlement have merit. I recognize the expense and length of continued proceedings necessary to prosecute and defend the claims through further appeal, and have taken into account the uncertain outcomes and risks.

11. As Class Counsel, I believe the Settlement confers significant benefits to the class and is fair, reasonable, adequate, and in the best interest of the Settlement Class given the costs and risk faced by protracted litigation.

12. It is my opinion, based on the record of the case and analyzing the likelihood of success, that the Settlement is in the best interest of the Settlement Class and does not improperly grant preferential treatment to the class representatives or segments of the class and falls within the range of possible approval.

13. I therefore recommend both preliminary and final approval of the proposed Settlement.


I declare under penalty of law that the foregoing is true and correct.


DATED: Honolulu, Hawaiʻi, November 7, 2025

*Terrance M. Revere*

_____

Terrance M. Revere

22

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT
STATE OF HAWAII

| | |
|---|---|
| SHAWN HUNKINS, ANDREA HUNKINS, and LINDSEY LADNIER, on behalf of Themselves and All Others Similarly Situated<br><br>Petitioners,<br><br>v.<br><br>ISLAND PALM COMMUNITIES LLC; HICKAM COMMUNITIES LLC; DOE Defendants 1-10,<br><br>Respondents. | CIVIL NO. 1CSP-25-0000454<br>(Other Non-Vehicle Tort) |

I hereby certify that a true and correct copy of the foregoing document was duly served on the following parties electronically via CM/ECF, on November 7, 2025, addressed as set forth below:

LUNG ROSE VOSS & WAGNILD
MATTHEW C. SHANNON 9043-0
JAI W. KEEP-BARNES 10787-0
Topa Financial Center
700 Bishop Street, Suite 900
Honolulu, Hawaii 96813
T: (808) 523-9000

    DATED:  Honolulu, Hawaii, November 7, 2025.

/s/ Kyle Smith
PATRICK KYLE SMITH
*Attorneys for Petitioners*

23